# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
December 02, 2014 Session

## MARK MILLER v. ANNIE MILLER

**Appeal from the Circuit Court for Davidson County**
**No. 09D2178     Phillip R. Robinson, Judge**

---

**No. M2014-00281-COA-R3-CV** - **Filed January 7, 2015**

---

Plaintiff/Appellee Mark Andrew Miller ("Father") filed a petition for contempt against Defendant/Appellant Annie Elizabeth Miller ("Mother"). After conducting a hearing, the trial court found Mother guilty of two counts of criminal contempt. Mother appealed asserting that the trial court lacked jurisdiction over the matter or, alternatively, that the evidence did not support a finding that she acted willfully. Although we conclude that the trial court had jurisdiction to adjudicate Father's petition for contempt, we agree with Mother that the contempt convictions should be overturned. We reverse.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ARNOLD B.GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Cynthia Cheatham, Manchester, Tennessee, for the appellant, Annie Miller

Nathaniel H. Koenig, Nashville, Tennessee, for the appellee, Mark Miller (*No brief filed*)

## OPINION

### I. Background and Procedural History

This appeal arises out of a post-divorce criminal contempt proceeding in the Circuit Court of Davidson County. The parties in this matter were divorced in Tennessee on September 21, 2011. In addition to containing various provisions regarding the division of the marital assets and debts, the awarding of alimony, and the awarding of attorney's fees, the final decree of divorce incorporated by reference a permanent parenting plan which designated Mother as the primary residential parent for the parties' two minor children.

Pursuant to the terms of the parenting plan, Mother was allowed 250 days of parenting time per year, whereas Father was entitled to 115 days.

After the parties divorced, Mother sought to relocate to Appleton, Wisconsin. On July 19, 2012, an agreed order was entered in the Circuit Court of Davidson County acknowledging the parties' agreement that Mother be allowed to relocate with the minor children effective August 1, 2012. Later, on December 27, 2012, the trial court entered a modified parenting plan in response to the parties' agreement concerning Mother's relocation.[1] Pursuant to the modified parenting plan, Mother was awarded 274 days of parenting time per year, in contrast to Father's awarded 91 days. As is of significance to this appeal, the modified parenting plan allowed Father to exercise parenting time with the children during their spring and summer vacations. Concerning the spring break visitation, the modified plan provided specifically as follows:

> The Father shall have Spring Break every year with the Mother transporting the children to Nashville by 6:00 p.m. the first full day the children are out (whether it falls on a weekend or weekday) and the Mother picking the children up (by car or flight) before 12:00 noon on the day before school recommences.

Concerning the summer visitation, the modified plan provided:

> The Mother shall deliver the children to the Father in Nashville two (2) days after school lets out for the summer and the Father shall return them to the Mother sixteen (16) days before school starts. The Mother is awarded two (2) weekends during the summer being the first Friday in July and the following weekend and the first Friday in August and the following weekend at the Mother's expense. Mother shall notify the Father if she intends to exercise this parenting time.

Despite the schedule outlined in the parenting plan, Mother did not bring the children

---

[1]Although the parenting schedule outlined in the order from December 27, 2012, is what is at issue in this case, we note that the parenting plan was technically modified in two minor respects in early-to-mid 2013. On March 18, 2013, an agreed order was entered which slightly modified the time Mother would be allowed to pick up the children at the end of the children's visitation with Father in Nashville, and on May 9, 2013, another agreed order was entered reflecting the parties' agreement as to particular exchange locations for the minor children.

to visit with Father during his 2013 spring break and summer vacation parenting time. In February 2013, while the children were in Wisconsin with Mother, a report was made to the Winnebago County Department of Human Services ("Winnebago DHS") alleging concerns that Father had sexually abused and neglected the minor children. Winnebago DHS commenced an investigation into the matter, and in March 2013, one of its social workers wrote a letter, a copy of which was received by both parties, recommending that the children's visitation with Father be suspended until the investigation was closed. Based on this letter and her fears of sending the children to be with Father, Mother did not bring the children to visit with Father over the spring break holiday.

Eventually, the investigation by the Winnebago DHS came to a conclusion. The investigation did not result in a finding that the children were unsafe, but a narrative assessment completed by a DHS social worker did indicate that the children had reported incidents of neglect and inappropriate touching by Father. No direct action was taken against Father. Before Father's summer visitation with the minor children was to commence, however, one of the children discussed during counseling his continued fear that Father would touch him inappropriately. Soon thereafter, Mother moved for restraining orders in Wisconsin, seeking to enjoin Father from having contact with the children. Mother originally filed for injunctive relief on June 5, 2013, in Outagamie County, Wisconsin, and on the same date, temporary restraining orders were entered against Father with respect to both minor children. Attached to Mother's petitions for injunctive relief was the narrative assessment by the Winnebago DHS which described the children's reports of abuse; it is worth noting that the DHS report mentioned the existence of an established family court order in Tennessee. Also attached to Mother's petitions was a letter from a therapist of one of the children, wherein the therapist relayed that one of the minor children had expressed fear to her at the thought of being left alone with Father. On June 18, 2013, the Circuit Court in Outagamie County dismissed Mother's requests for injunctive relief and noted that such requests must properly lie in Winnebago County where Mother and the children resided.

As it turns out, Mother had already filed petitions for injunctive relief in Winnebago County on June 11, 2013. Like the petitions filed in Outagamie County, the petitions filed in Winnebago County had the DHS narrative assessment and the children's therapist's letter as attached exhibits. On the same date that her Winnebago County petitions were filed, the Circuit Court judge granted Mother's applications for temporary restraining orders, appointed a guardian ad litem, and set the matters for hearing. Pursuant to the restraining orders, Father was ordered to avoid contact with the minor children. During the pendency of the Wisconsin proceedings, the Winnebago County Circuit Court entered orders denying Father's attempt to dismiss the child abuse restraining order actions. Specifically, in orders dated August 1, 2013, the Winnebago County Circuit Court found that "[t]he minor children and mother have resided in the State of Wisconsin for more than six months. Therefore, Wisconsin is

presently the home state for the minor children of the parties. Substantial information concerning the children is available in Wisconsin." Mother's injunction actions were ultimately dismissed by the Winnebago County Circuit Court in September 2013 for failure to meet the applicable burden of proof.[2]

On June 14, 2013, Father filed a "Petition for Contempt and Modification" in the Circuit Court of Davidson County. The petition alleged that the children's spring break that year had commenced on March 24, 2013, and that Mother had failed to bring the children to visit with Father for his scheduled parenting time. The petition further alleged that Mother was required to bring the children to Nashville for Father's summer parenting time two days after school ended and claimed that although school had ended on June 5, 2013, Mother had not yet transported the children to visit Father. From Father's perspective, Mother's failure to bring the children for Father's spring and summer visitation constituted acts of "willful and wanton" contempt in violation of the Davidson County court's December 27, 2012 order. In his prayer, Father asked that Mother be found guilty on two counts of criminal contempt. Within Father's petition, reference was made to the then-pending Wisconsin injunction proceedings, and subsequent to the filing of the petition, Father filed a motion requesting that the trial judge in Davidson County contact the Circuit Court judge[3] in Wisconsin.

On August 2, 2013, Mother moved to dismiss Father's petition for contempt and modification, noting that she had obtained a temporary restraining order against Father from the Circuit Court in Wisconsin. A memorandum in support of her position was filed on August 14, 2013, and on the same date, Mother filed certified copies of certain pleadings from the courts of Wisconsin.[4] Mother also filed a response to Father's motion for a telephonic conference, wherein Mother requested that the parties have an opportunity to participate in any communication between the Tennessee and Wisconsin courts.

The trial court denied Mother's motion to dismiss on November 7, 2013, and on December 20, 2013, Mother filed a response to Father's petition. The hearing on Father's

---

[2]We note that in addition to the injunction actions, Mother filed a notice of registration of the Tennessee divorce decree in the Winnebago County Circuit Court on June 21, 2013. Father objected to the registration of the Tennessee judgment in Wisconsin on July 17, 2013.

[3]Father's motion referenced that petitions had been filed in Outagamie County but listed the "Honorable Judge Woldt" as the judge whom the Davidson County court should contact. Based on certified copies of certain pleadings from the Wisconsin proceedings which were filed with the trial court below, we note that Judge Woldt is the Circuit Court judge in Winnebago County.

[4]Mother filed additional certified copies of Wisconsin court records on December 19, 2013.

petition for contempt finally took place on January 9 and 10, 2014.[5]  After denying an oral motion to dismiss[6] made by Mother's counsel at the commencement of the hearing, the Davidson County Circuit Court  heard proof from both sides.

Father's testimony tracked the allegations he made against Mother in the petition for contempt.  He stated that the children were not transported to be with him over spring break in 2013 and further stated  that he did not receive the children two days after school let out for summer that year, as was provided for in the Court's order.  After Mother did not appear with the children for the summer visitation period, Father stated "it was apparent to me at that point that she and the children were not going to be coming, because I became aware that there had been civil suits filed in Wisconsin."  Concerning the time period of his scheduled spring break visitation, Father acknowledged that, by March 25, 2013, he had received the letter from the Winnebago DHS recommending that his visitation with the children be suspended.

Mother's first witness was Megan Wendt ("Ms. Wendt"), a former social worker for the Winnebago DHS from May 2009 to August 2013.  Ms. Wendt participated in the hearing by telephone.   Ms. Wendt testified that she became involved with the parties' children due to a referral to the Winnebago DHS which involved allegations of sexual abuse and neglect.  She stated that she could verify that Mother had not made the referral.  In describing her involvement in the case, Ms. Wendt testified that she made contact with Mother and the children once the referral had been assigned to her.  She revealed that during forensic interviews for which she was present, the children made statements about being left unattended by Father.  She further indicated that both children were fearful of going to spend time with Father and that one of the children had discussed Father inappropriately touching him.  As a result of the disclosures made by the children, Ms. Wendt testified that she wrote a letter on or about March 22, 2013, recommending that Father's parenting time be suspended. This was the same letter that Father acknowledged receiving on March 25, 2013. Ms. Wendt stated that she wrote the letter because she had concerns at that time about the children visiting Father during the 2013 spring break period.

Mother's next witness was Scott Metz ("Mr. Metz"), her attorney in the Wisconsin proceedings.  Like Ms. Wendt, Mr. Metz participated in the hearing by telephone.  Mr. Metz testified that Mother initially came to see him in January 2013.  He indicated that Mother

<hr>

[5]The hearing was limited to the contempt issues and did not concern Father's petition for modification.

[6]The oral motion made at the hearing was based on Father's alleged failure to notify the Mother of the specific dates and times of the charged contempts.

came to him with concerns that she needed a Wisconsin attorney due to the fact that she had been living in Wisconsin for some time at that point. According to his testimony, Mr. Metz advised Mother that Tennessee had ongoing jurisdiction, but he did recommend that they register the Tennessee orders in Wisconsin. Mr. Metz indicated that there were no allegations of sexual abuse concerning the Father when he first met with Mother but noted that when a report was made about Father's inappropriate touching, he assisted Mother with that investigation. He further acknowledged that as the children's 2013 spring break had approached, he and Mother had discussed whether she should send the children to visit with Father. Specifically, Mr. Metz testified that he and Mother had discussed that she "ought to send the children to Tennessee" "unless Child Protective Services did something[.]" He testified that after Mother received the March 2013 letter from Winnebago DHS and consulted with him, she decided not to send the children for spring break. Mr. Metz testified that the Child Protective Services investigation by the Winnebago DHS continued after spring break but that the investigation did not result in a specific finding that something happened in regards to the claims of abuse. Mr. Metz stated that the investigation essentially found that one of the children reported inappropriate touching and that the child who reported the touching would be referred to counseling. Mr. Metz further testified, however, that after one of the minor children reiterated claims of sexual abuse while in counseling, he recommended that Mother file a child abuse restraining order action in Wisconsin. Mr. Metz described during his testimony how he originally filed for injunctive relief on behalf of Mother in Outagamie County, but later filed for restraining orders in Winnebago County. He noted that court officials in both counties granted temporary restraining orders. Mr. Metz testified that the restraining order actions in Winnebago County were ultimately dismissed when it was determined that Mother had not met her burden of proof. The Outagamie County actions, he noted, had previously been dismissed for being commenced in an improper county. When the trial judge in Davidson County asked Mr. Metz during the contempt hearing if he had considered taking advantage of the emergency jurisdiction provision of Wisconsin's version of the Uniform Child Custody Jurisdiction and Enforcement Act, Mr. Metz conceded he had not.

After the testimony of Mr. Metz was concluded, Mother testified at the hearing in defense of the contempt charges brought against her. Mother testified that it never had been her intention to disobey any order. When she was asked why she did not send the children for their spring break visitation with Father, Mother stated that, given the information she was provided, she did what she thought was the best thing to do in order to protect them. She testified that she had feared for the safety of her children. With regard to the summer visitation period, Mother agreed that Father's visitation had been scheduled to begin on June 7, 2013, but because of the Wisconsin restraining orders, she testified that she believed she was not allowed to take the children to visit Father. In her testimony, Mother emphasized that she was not the individual who made the report to DHS in spring 2013.

On January 10, 2014, the trial court ruled from the bench and found Mother guilty of two counts of criminal contempt for violating its order with respect to the Father's spring break and summer visitation. The court sentenced Mother to seven days in jail but stayed execution on all but two days. These rulings were memorialized in an order entered on January 27, 2014. Mother now appeals.[7]

## II. Issues Presented

The issues raised by Mother[8] on appeal, as stated in her brief, are as follows:

> 1. Did the trial court maintain personal jurisdiction[9] when the children had lived in Wisconsin for over a year and their only connection to Tennessee was visitation with their Father during summers and holidays?
> 2. Did the trial court err in finding the Mother in contempt for failing to produce the children for spring break visitation to the Father during a child abuse investigation related to his alleged abuse of the children and after Wisconsin authorities issued a letter advising against visitation?
> 3. Did the trial court err in finding the Mother in contempt when she failed to produce the children for summer visitation while under a protective order from Wisconsin preventing all contact between the Father and the children?

## III. Standard of Review

In reviewing any findings of fact by the trial court, our review is *de novo* "upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review a trial court's conclusions on questions of law *de novo*, but no presumption of correctness

---

[7]We note that Father's modification petition had not been heard at the time Mother appealed the trial court's order finding her in contempt. This fact, however, does not prevent the contempt order from being considered final and appealable. "'[A] judgment of contempt . . . becomes final upon the entering of punishment therefor . . . and is thus appealable as of right under Rule 3 T.R.A.P.'" *Moody v. Hutchison*, 159 S.W.3d 15, 30–31 (Tenn. Ct. App. 2004) (quoting *State v. Green*, 689 S.W.2d 189, 190 (Tenn. Crim. App. 1984)).

[8]Father did not file a brief in this matter, nor did he appear at oral argument in this cause.

[9]Although Mother questions whether Tennessee had personal jurisdiction in this case, we perceive the thrust of her argument as questioning whether Tennessee had subject matter jurisdiction over Father's petition under the Uniform Child Custody Jurisdiction and Enforcement Act.

attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

"The concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or controversy." *Staats v. McKinnon*, 206 S.W.3d 532, 541–42 (Tenn. Ct. App. 2006) (citations omitted). "The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought." *Id.* at 542. The parties cannot confer jurisdiction "by appearance, plea, consent, silence, or waiver." *Id.* The question of whether subject matter jurisdiction exists may be raised at any time by the parties or by the court *sua sponte*. *Gillespie v. State*, 619 S.W.2d 128, 129 (Tenn. Ct. App. 1981). Because a determination of whether subject matter jurisdiction exists is a question of law, our review is *de novo*, without any presumption of correctness. *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

"Criminal contempts . . . are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). To establish a criminal contempt claim based on a party's failure to comply with a court order, four elements must be established: (1) the order alleged to have been violated must be "lawful"; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order; and (4) the person's violation of the order must be "willful". *See Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 354–55 (Tenn. 2008). "Persons charged with criminal contempt are presumed innocent, and the State must prove them guilty beyond a reasonable doubt." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citations omitted). On appeal, however, persons convicted of criminal contempt lose their presumption of innocence. *Id.* (citation omitted). Findings of guilt shall only be set aside when the evidence is insufficient to support the finding of contempt beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e).

## IV. Discussion

As we perceive it, this appeal presents two primary issues for our review. One, we must determine whether the trial court properly exercised jurisdiction over Father's criminal contempt petition. Second, we must determine whether the evidence supports the trial court's findings of contempt. We will address the jurisdictional question first.

### *Jurisdiction*

On appeal, Mother takes issue with the fact that the Davidson County Circuit Court

exercised jurisdiction over Father's contempt petition. In her brief, she points out that the children have lived in Wisconsin since August 2012 and notes that Wisconsin is where the children's schools and counseling services are located. She further notes that Wisconsin is where the initial abuse investigation was commenced and emphasizes that the Winnebago Circuit Court made a finding evidencing an intent to exercise jurisdiction over the children and the parties. As Mother sees it, Father's mere presence in Tennessee is not enough to give Tennessee ongoing, continuing jurisdiction to adjudicate this matter.

There is no disputing that the Wisconsin court entered an order evidencing its intent to exercise jurisdiction over the children and the parties. Likewise, there is no disputing that the trial judge in Davidson County provided his assent to the conclusion that Wisconsin is now the home state of the children. In his November 7, 2013, "Order on Jurisdiction" which denied Mother's motion to dismiss Father's petition, the trial judge acknowledged that "Wisconsin . . . rightly declared itself to be the children's current home state as the children have lived in that state for at least six consecutive months prior to the filing of the Father's petition." Nevertheless, we hold that neither Wisconsin's involvement in this case, nor a finding that it is the home state of the parties' children negates the jurisdictional authority the Davidson County Circuit Court exercised to find Mother in contempt.

In reaching this conclusion, we must emphasize that the trial court adjudicated Father's petition for contempt, not his petition for modification. As such, even if we were inclined to agree with Mother's contention that Tennessee no longer has jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") to exercise authority over the children and make determinations concerning their custody, such a finding, by itself, would not put the legitimacy of the Davidson County Circuit Court's contempt rulings in question. In *Adams v. Cooper*, the Middle Section of this Court noted that "[o]ur supreme court has observed that a court which loses jurisdiction to modify custody 'seemingly' retains jurisdiction to enforce its unmodified custody order through contempt." *Adams v. Cooper*, No. M1999-02664-COA-R3-CV, 2000 WL 225573, at *7 n.11 (Tenn. Ct. App. Feb. 29, 2000) (citing *Marcus v. Marcus*, 993 S.W.2d 596, 603 n.13 (Tenn. 1999). Moreover, in the recent decision of *Heilig v. Heilig*, we noted that even if a Tennessee court would no longer have jurisdiction to modify a child custody order, it could still enforce the order in a contempt proceeding when no other court had assumed jurisdiction to enter a contrary order. *Heilig v. Heilig*, No. W2013-01232-COA-R3-CV, 2014 WL 820605, at *5 (Tenn. Ct. App. Feb. 28, 2014).

In this matter, the record reflects that Tennessee's custody determination was the only custody determination that existed at the time Mother was found to be in contempt. Although

the Wisconsin court had previously asserted jurisdiction[10] to enter temporary restraining orders against the Father, these custody determinations[11] were dissolved several months before the contempt hearing. Very simply, no contrary custody order was properly in place at the time Tennessee's custody order was enforced by the Davidson County Circuit Court judge. Again, even if we were to agree with Mother that Tennessee had lost modification jurisdiction as to child custody, we find it properly exercised jurisdiction as to Father's contempt petition.

Despite this conclusion, our review of this case has led to some troubling findings regarding the role played by both the Wisconsin and Tennessee courts with respect to this matter. In a number of distinct, yet related respects, we find that the circuit courts in both states fell short of their duties under the UCCJEA. These shortcomings are worthy of comment here, because had they not occurred, the dispute between the parties regarding Father's summer visitation period could have potentially been avoided.

The UCCJEA governs jurisdiction among the states over child custody proceedings. *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006). It remains "the exclusive source for the ground rules for exercising jurisdiction to modify another state's child custody determination." *Staats*, 206 S.W.3d at 547. Under Tennessee's version of the UCCJEA, the fact that the home state[12] of the parties' children has changed is not ultimately dispositive of whether jurisdiction exists in a given state to modify a child custody determination made in accordance with the UCCJEA. As it was explained by the Middle Section of this Court:

A state that has made or modified a child custody determination

---

[10] Although we would not dispute that the Outagamie and Winnebago Circuit Courts in Wisconsin had jurisdiction to enter temporary restraining orders pursuant to the emergency jurisdiction provision under Wisconsin's version of the UCCJEA, we are skeptical that the Wisconsin courts properly exercised their judicial authority pursuant to such a limited jurisdictional basis.

[11] Under Wisconsin's version of the UCCJEA, a "'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." Wis. Stat. Ann. § 822.02. A substantially identical definition is provided for in Tennessee's version of the UCCJEA. *See* Tenn. Code Ann. § 36-6-205 (2014). This Court has previously noted that a temporary restraining order may qualify as a "child custody determination" under the UCCJEA. *See Jones v. Taylor*, No. M2005-02772-COA-R10-CV, 2006 WL 2450273, at *7 (Tenn. Ct. App. Aug. 21, 2006) (noting that a temporary restraining order enjoining interference with a Father's custody qualified as a "child custody determination").

[12] Under the UCCJEA, the "home state" "means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." Tenn. Code Ann. § 36-6-205 (2014).

. . . retains exclusive, continuing jurisdiction over the determination until one of two things occurs. First, a state loses exclusive, continuing jurisdiction if a court of that state determines that neither the child nor the child and at least one parent or person acting as a parent continues to have a significant connection with the state and that substantial evidence concerning the child's care, protection, training, and personal relationships is no longer available in the state. Second, a state loses exclusive, continuing jurisdiction if a court of any state determines that "the child, the child's parents, and any person acting as a parent do not presently reside" in the state.

*Staat*s, 206 S.W.3d at 548 (internal citations omitted).

Wisconsin's version of the UCCJEA contains substantially similar provisions. Mirroring Tennessee Code Annotated § 36-6-218, Wisconsin Statutes Annotated § 822.23 provides that a Wisconsin court may not modify a child custody determination made by a court of another state unless it has jurisdiction to make an initial determination and one of the following applies: (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction or that Wisconsin would be a more convenient forum or (2) a Wisconsin court or a court of the other state determines that the child, the child's parents, and all persons acting as parents do not presently reside in the other state. Wis. Stat. Ann. § 822.23. Although Wisconsin's version of the UCCJEA provides for temporary emergency jurisdiction, such jurisdiction is only available if the child is present in the state "and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." Wis. Stat. Ann. § 822.24; Tenn. Code Ann. § 36-6-219 (2014) (same).

When the Wisconsin courts enjoined Father from having contact with the children by entering temporary restraining orders, they necessarily modified the child custody determination of the Davidson County Circuit Court. It is important to note that at the time the restraining orders were entered, neither of the circumstances outlined in Wisconsin Statutes Annotated § 822.23(1) and (2) were established such that a Wisconsin court would have had authority to permanently modify the Tennessee child custody determination. No Tennessee court had determined that it no longer had exclusive, continuing jurisdiction or that a Wisconsin court would be a more convenient forum, and no court in either state had determined that the children and their parents all presently resided outside of Tennessee. Absent the establishment of such judicial determinations, the Wisconsin courts had no basis for jurisdiction other than on an emergency basis. *See* Wis. Stat. Ann. § 822.23. If the Wisconsin courts were not operating under this jurisdictional understanding when they

entered the temporary restraining orders against Father, they were in error. In this vein, we note that the Wisconsin courts were specifically alerted to the existence of a child custody determination in Tennessee. As already indicated, Mother attached the narrative assessment completed by Winnebago DHS to each of her petitions for injunctive relief; this DHS report, which was incorporated into the petitions by reference, clearly mentioned the existence of an established family court order in Tennessee.

Although we are certainly skeptical of whether the Wisconsin courts entered the temporary restraining orders against Father under the auspices of temporary emergency jurisdiction[13], it is clear that was the only proper basis for exercising jurisdiction in Wisconsin. Moreover, it is clear that the Wisconsin courts did not comply with their responsibilities under the temporary emergency jurisdiction provision of the UCCJEA. Under Wisconsin's version of that provision, which is codified at Wisconsin Statutes Annotated § 822.24, certain judicial communication duties are imparted on trial judges upon learning that a court of another state has entered a child custody determination:

> (3) If a previous child custody determination is entitled to be enforced under this chapter, or a child custody proceeding has been commenced in a court of a state having jurisdiction under ss. 822.21 to 822.23, any order issued by a court of this state under this section shall specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under ss. 822.21 to 822.23. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or until this period expires.

> (4) A court of this state that has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or that a child custody determination has been made by, a court of a state having jurisdiction under ss. 822.21 to 822.23, shall immediately communicate with the other court. A court of this

_____

[13] While testifying telephonically at the contempt hearing in Davidson County, Mother's Wisconsin counsel conceded that he had not considered taking advantage of the emergency jurisdiction provision of Wisconsin's version of the UCCJEA. Moreover, we note that the findings by the Winnebago County Circuit Court judge seem to reflect an intent to assert primary jurisdiction over all child custody matters pertaining to the parties. Perhaps this is not the case, but the language used in the orders entered by the Winnebago County Circuit Court on August 1, 2013, seem to bolster this conclusion.

state that is exercising jurisdiction under ss. 822.21 to 822.23, upon being informed that a child custody proceeding has been commenced in, or that a child custody determination has been made by, a court of another state under a statute similar to this section, shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

Wis. Stat. Ann. § 822.24.

We see nothing in the record transmitted to us indicating that the Wisconsin courts communicated with the Davidson County Circuit Court as was required by the statute. Mother's petitions for injunctive relief gave notice that a prior child custody determination had been made in Tennessee, and despite Wisconsin's ability to enter restraining orders to protect the children on an emergency basis, the statute clearly calls for cooperation between jurisdictions so as to prevent a state that exercises emergency jurisdiction from usurping the claimed jurisdiction of another state. Had communication occurred between Wisconsin and Tennessee, any number of possibilities could have resulted. For instance, the entire basis for Father's contempt petition concerning the missed summer visitation could have been altered. We have already discussed the fact that Father's summer visitation with the children was to begin on June 7, 2013. The original restraining orders in Outagamie County were entered on June 5, 2013. Had communication taken place immediately, the Tennessee court may have perhaps entered a restraining order of its own, pending further inquiry into Mother's allegations. Whether the Wisconsin courts intended to act pursuant to the UCCJEA's emergency jurisdiction provision is ultimately of no moment; we simply note that temporary emergency jurisdiction was the only basis for exercising authority over the children and that the Wisconsin courts abdicated their communication duties under the corresponding statute.

We likewise fault the Davidson County Circuit Court for failing to fulfill its duties under Tennessee's version of the UCCJEA's temporary emergency jurisdiction provision. Pursuant to Tennessee Code Annotated § 36-6-219(d), the Davidson County court also had communication duties which it was required to carry out. In part, that section provides as follows:

A court . . . which is exercising jurisdiction pursuant to §§ 36-6-216–36-6-218, upon being informed that a child custody proceeding has been commenced in, or a child-custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the

safety of the parties and the child, and determine a period for the duration of the temporary order.

Tenn. Code Ann. § 36-6-219(d) (2014).

In this case, there is nothing in the record indicating that the Davidson County Circuit Court communicated with the Wisconsin courts concerning the restraining orders that had been entered against Father. Father's petition for contempt and to modify specifically referenced the Wisconsin proceedings, and although we are not sure when the Davidson County trial judge reviewed Father's petition for the first time, the court was clearly aware of it on September 19, 2013, when it held a hearing on Mother's motion to dismiss. Pursuant to Tennessee Code Annotated § 36-6-219(d), the court was required to "immediately communicate" with the Wisconsin court concerning the temporary restraining orders that had been entered there. We note that at the contempt hearing in this case, the Davidson County Circuit Court judge specifically commented that "the only basis [he] saw for the Wisconsin Court having jurisdiction would be the emergency jurisdiction of the UCCJEA." Whatever merits the Davidson County Circuit Court judge may have given to the apparent exercise of such jurisdiction, he was required under Tennessee Code Annotated § 36-6-219(d) to immediately communicate with the foreign jurisdiction upon being informed of it.

The communication duties mandated by the UCCJEA are significant duties, and they should not be given short shrift by the courts who are directed to follow them. The courts from both states involved in this dispute did not properly heed what was required of them by statute. Although it is possible that the Davidson County court may have not been made aware of the Wisconsin proceedings until after Father's originally scheduled summer visitation had passed, the Wisconsin proceedings were clearly commenced prior to the time Mother was obligated to transport the children to Nashville.[14] Had the Wisconsin courts properly recognized their jurisdictional footing and concomitantly fulfilled their communication duties under Wisconsin Statutes Annotated § 822.24, this entire matter could have potentially been avoided, at least insofar as it concerns the summer visitation period.

With respect to the Davidson County Circuit Court's involvement in child custody proceedings between these parties going forward, we note that it can always communicate with a court of another state when proceedings under the UCCJEA have been initiated.[15]

---

[14]The filing in Outagamie County occurred on June 5, 2013.

[15]We note that the court must always communicate with courts in foreign jurisdictions under certain specified circumstances. *See, e.g.*, Tenn. Code Ann. § 36-6-219(d) (requiring immediate communication when learning of emergency proceeding commenced in another state); Tenn. Code Ann. § 36-6-221(b)

-14-

Tenn. Code Ann. § 36-6-213 (2014). If it determines that "it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum[,]" it may decline to exercise its jurisdiction. Tenn. Code Ann. § 36-6-222 (2014). Of course, in order for Tennessee to retain continuing jurisdiction in the first place, the children must have a significant connection with the state and substantial evidence must be available in Tennessee concerning the children's care, protection, training, and personal relationships. Tenn. Code Ann. § 36-6-217 (2014). Any determination by the trial court that it has exclusive, continuing jurisdiction is always subject to our review on appeal. *See Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *6 (Tenn. Ct. App. Jan. 26, 2009) (determining that the judgment of the trial court was void by concluding that a mother and her children lacked a significant connection with Tennessee and that substantial evidence was no longer available in the state concerning the children).

*The trial court's contempt findings*

Despite our conclusion that the Davidson County Circuit Court had jurisdiction to adjudicate Father's petition for contempt, it is still necessary to determine whether the evidence supports the trial court's findings holding Mother in criminal contempt. Having carefully reviewed the evidence, we respectfully conclude that the contempt findings were in error. Specifically, we are of the opinion that the evidence is insufficient to support the trial court's findings that Mother's violations of its order were willful.

As we have already noted, in order to establish a criminal contempt claim based on a party's failure to comply with a court order, the person's violation of the order must be "willful." *See Furlong*, 370 S.W.3d at 336; *Konvalinka*, 249 S.W.3d at 354–55. Although willfulness in the context of a civil contempt proceeding is identified by acts that are the product of free will rather than coercion, "[i]n the criminal context, a willful act is one undertaken for a bad purpose." *Konvalinka*, 249 S.W.3d at 357 (citations omitted); *see also Mobley v. Mobley*, No. E2012-00390-COA-R3-CV, 2013 WL 1804189, at *18 (Tenn. Ct. App. Apr. 30, 2013) (citation omitted). In this case, there is no dispute that Mother violated the order of the Davidson County Circuit Court. She did not bring the children to visit Father during their spring break, and she failed to transport the children to Nashville for Father's summer visitation. The evidence adduced at trial, however, does not support the conclusion that Mother acted with a bad purpose.

With respect to the spring break period, it is important to emphasize that Mother had received a letter from Winnebago DHS immediately prior to spring break recommending that

_____

(requiring a stay of proceedings and communication with court of another state upon learning that a child custody proceeding has been commenced in that foreign jurisdiction).

Father's visitation be suspended. During the contempt hearing, Mother testified that she did not send the children to visit Father because she thought she was doing the best thing she could do in light of the information she had received. She testified that she had feared for the safety of the children and stated that it had never been her intention to disobey any order.

Mother's testimony indicates that she did not intend to flaunt the orders of the Davidson County court. Rather, it merely reflects that she had concerns about sending the children to be with Father in light of the recommendations made by the Winnebago DHS. Although in the future we would certainly direct Mother to secure relief from the courts before unilaterally deviating from the mandated parenting schedule, the evidence in this case is not indicative of a bad purpose. Mother even testified that she was not the individual who made the initial report to DHS, an assertion which was confirmed through the testimony of Ms. Wendt.

With respect to the summer visitation period, we note that visitation with the children was ostensibly subject to the temporary restraining orders from the Wisconsin proceedings. Although the Wisconsin courts should have discerned their proper jurisdictional footing from the outset of Mother's injunction actions and immediately communicated with the Davidson County Circuit Court, it remains a fact that Father was subject to no-contact orders during the pendency of his summer visitation. Mother's reliance on these orders is not indicative of a bad purpose.

## V. Conclusion

Although we do not find that the trial court erred in asserting jurisdiction over Father's petition for contempt, we conclude that the evidence does not support the findings of criminal contempt that were made against Mother. Simply put, the evidence does not support a finding that Mother acted willfully in failing to comply with the spring break and summer parenting schedule. The Davidson County Circuit Court's order finding Mother in criminal contempt is hereby reversed. Costs on appeal are assessed against the Plaintiff/Appellee, Mark Andrew Miller, for which execution shall issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE