FILED
03/04/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 3, 2023 Session

## BRITTANY SHARAYAH LEHMANN v. JERRY SCOTT WILSON

**Appeal from the Chancery Court for Rutherford County**
**No. 22CV-712     Barry R. Tidwell, Judge**

_____

### No. M2023-00232-COA-R3-CV

_____

The appellant challenges his convictions on two charges of criminal contempt for violating an order of protection prohibiting him from contacting his former partner. The convictions arise from two communications between the appellant and the appellee when exchanging their minor child. We have determined that the underlying orders lack the required level of clarity and contain significant ambiguities. We, therefore, reverse the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and JEFFREY USMAN, JJ., joined.

Daniel Alexander Horwitz, Melissa Kathleen Dix, and Lindsay Smith, Nashville, Tennessee, for the appellant, Jerry Scott Wilson.

Catherine Teresa Mekis and Laurie Young, Murfreesboro, Tennessee, for the appellee, Brittany Sharayah Lehmann.

### OPINION

#### FACTUAL AND PROCEDURAL HISTORY

Brittany Sharayah Lehmann and Jerry Scott Wilson are former romantic partners who previously lived together and have one minor child together. The relationship between the parties deteriorated until eventually Ms. Lehmann and Dr. Wilson filed competing petitions for orders of protection against one another. In her petition against Dr. Wilson, filed on April 19, 2022, Ms. Lehmann alleged verbal and physical abuse and that she feared for her safety. The Chancery Court for Rutherford County entered an ex parte order of protection (the "April 19 order") the same day. The order prohibited Dr. Wilson from

contacting Ms. Lehmann or her minor children "either directly or indirectly, by phone, email, messages, mail or any other type of communication or contact."[1]

The parties agreed to continue the original hearing date on Ms. Lehmann's petition to allow for discovery to take place, with the ex parte order remaining in place until further orders of the court. Both parties appeared in court on August 1, 2022, and were represented by counsel. The court entered an agreed order (the "August 1 order") to continue the ex parte order of protection. The August 1 order provided that the minor child would be removed from the ex parte order of protection and for Dr. Wilson to have parenting time with the child every Wednesday and certain Saturdays. The order also provided that the exchanges of the child would occur at the child's care provider and the Rutherford County sheriff's department. The ex parte order would remain in effect until April 18, 2023, and would automatically expire on that date.

In September 2022, Ms. Lehmann contacted law enforcement alleging that Dr. Wilson had violated an order of protection that prohibited him from contacting her. On September 13, 2022, the Rutherford County General Sessions court entered an Order Authorizing Law Enforcement Arrest on Contempt of Ex Parte Order of Protection supported by the affidavit of a sheriff's deputy. The affidavit recounted what Ms. Lehmann had told the deputy regarding a text Dr. Wilson sent to her on September 12, 2022, about the parties' internet service. On September 14, 2022, the general sessions court entered another Order Authorizing Law Enforcement Arrest on Contempt of Ex Parte Order of Protection supported by the affidavit of a sheriff's deputy. This affidavit recounted what Ms. Lehmann had told a deputy about an interaction with Dr. Wilson after exchanging their child at the sheriff's department, also about the internet service. Dr. Wilson was served with the orders on September 14, 2022. Dr. Wilson was eventually arrested for the two charges, made bail, and was released.

After several agreed continuances, a trial on the two contempt charges was held in chancery court on January 23, 2023. At the trial, there was some confusion concerning whether the matter was civil or criminal in nature and whether the matter could later also be heard in criminal court. The court determined that the matter was not going to be heard in criminal court based on the docket number assigned to the case and Tenn. Code Ann. § 36-3-612(a).[2] The court also determined that the proceeding was to be treated as a criminal contempt hearing.

---

[1] Dr. Wilson's separate petition for order of protection is not included in the record and is not at issue on appeal. While he did bring his own contempt complaint against Ms. Lehmann, he ultimately dismissed the complaint.

[2] Tennessee Code Annotated section 36-3-612(a) explains the procedure for contempt hearings after an order of protection has allegedly been violated, stating in relevant part: "A person arrested for the violation of an order of protection issued pursuant to this part . . . shall be taken before a magistrate or the court

During the hearing, testimony was given regarding the two events underlying the contempt charges. Both contempt charges are based upon communications from Dr. Wilson to Ms. Lehmann. The first charge concerns a text message from Dr. Wilson to Ms. Lehmann about the parties' internet service provider. Dr. Wilson was attempting to transfer the service into his name from Ms. Lehmann's name and needed Ms. Lehmann to speak with the provider to allow the change to go into effect. Ms. Lehmann testified that on September 12, 2022, Dr. Wilson texted her saying, "Xfinity is calling you now. Please answer. I'm here now. I didn't realize the account was apparently just in your name when I transferred." Dr. Wilson testified that he had appointments the next day with several high needs patients and was worried about being able to properly contact them via telehealth.

Ms. Lehmann also testified to an interaction between her and Dr. Wilson on September 14, 2022, that formed the basis of the second contempt charge. The parties were meeting at the Rutherford County sheriff's department to exchange custody of their child. After exchanging the child, Ms. Lehmann went back to her vehicle to leave when Dr. Wilson came to her car and began speaking about events surrounding the Xfinity account. There is disputed testimony regarding what specifically was said at this encounter, but it is undisputed that Dr. Wilson approached Ms. Lehmann's car and began to speak to her. After initially leaving the sheriff's department, Ms. Lehmann returned and reported what had occurred.

At the conclusion of the hearing, the court found Dr. Wilson guilty of both contempt charges and ordered him to pay a fine of $10 to the clerk for each violation. The trial court entered a written order later that day. Dr. Wilson filed a timely appeal.

ISSUES

Dr. Wilson raises numerous issues for our review:

1. Whether [Ms. Lehmann's] failure to introduce into evidence the orders that [Dr. Wilson] allegedly violated precludes Appellant's contempt convictions.

2. Whether the trial court's August 1, 2022, order prohibiting "derogatory" statements was lawful.

3. Whether, as to either count, [Ms. Lehmann] introduced sufficient evidence to prove that the terms of the order that [Dr. Wilson] allegedly violated were clear, specific, and unambiguous.

---

having jurisdiction in the cause . . . to answer a charge of contempt for violation of the order of protection . . . ."

- 3 -

4. Whether, as to either count, [Ms. Lehmann] introduced sufficient evidence to prove that [Dr. Wilson] actually violated the trial court's order.

5. Whether, as to either count, [Ms. Lehmann] introduced sufficient evidence to prove that [Dr. Wilson's] alleged violations were "willful."

6. Whether [Dr. Wilson's] convictions must be vacated due to notice defects.

7. Whether the trial court's convictions must be vacated due to the trial court's failure to make sufficient factual findings.

Ms. Lehmann presents the same issues while also raising the issue of attorney's fees and costs on appeal.

STANDARD OF REVIEW

As this Court has previously stated:

A person charged with criminal contempt is "presumed innocent and may not be found to be in criminal contempt in the absence of proof beyond a reasonable doubt that they have willfully failed to comply with the court's order." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)). If the defendant is found guilty by the trial court, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the verdict of guilt. *Black*, 938 S.W.2d at 399.

*Pruitt v. Pruitt*, 293 S.W.3d 537, 545 (Tenn. Ct. App. 2008). Once an individual is convicted of criminal contempt, he or she loses the presumption of innocence and must overcome his or her presumption of guilt on appeal. *Thigpen*, 874 S.W.2d at 53. "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Id.* (citing Tenn. R. App. P. 13(e)). Reviewing courts, therefore, will not reverse a verdict of guilty "unless the relevant facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find the accused is guilty beyond a reasonable doubt." *Ross v. Ross*, No. M2008-00594-COA-R3-CV, 2008 WL 5191329, at *6 (Tenn. Ct. App. Dec. 10, 2008) (citing *State v. Johnson*, No. E2002-02028-CCA-R3-CD, 2003 WL 23094414, at *3 (Tenn. Crim. App. Dec. 30, 2003)).

ANALYSIS

## I. Ambiguity of the Underlying Orders

A court's contempt powers have "long been regarded as essential to the protection and existence of the courts and the proper administration of justice." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008). In Tennessee, as in other states, the courts' contempt power is now purely statutory. *Id.* Tennessee Code Annotated section 29-9-102 authorizes courts to "inflict punishments for contempts of court . . . [including cases of] [t]he willful disobedience or resistance of any . . . person, to any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3).

There are four essential elements to a charge of criminal contempt, (1) the order allegedly violated was lawful; (2) the order was clear, specific, and unambiguous; (3) the individual charged must have actually violated the order; and (4) the individual acted willfully in violating the order. *Konvalinka*, 249 S.W.3d at 354-55. While *Konvalinka* was concerned with a civil contempt proceeding, as opposed to a criminal contempt proceeding, this Court has previously held that the analysis set forth in *Konvalinka* applies to all contempt proceedings. *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011).

When a court makes a finding of contempt based on disobedience of a court order, the order underlying the charge must be clear, specific, and unambiguous. *Boren v. Wade*, No. W2022-00194-COA-R3-CV, 2023 WL 3000881, at *2 (Tenn. Ct. App. Apr. 19, 2023). Vague or ambiguous orders that can be interpreted as having more than one reasonable understanding cannot support contempt charges. *Konvalinka*, 249 S.W.3d at 356. An order "need not be full of 'superfluous terms and specifications'" to avoid being vague. *Id.* (quoting *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988)). Courts reviewing orders that have been alleged to have been violated should interpret any ambiguities in the order in favor of the person facing the contempt charge. *Id.* Courts evaluating an order alleged to have been violated apply "an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed." *Id.* Parties subject to an order are only required to interpret it reasonably to determine what conduct they may or may not do. *Id.* at 359. Courts are to subject the order to de novo review to determine whether it has the required level of clarity to be enforced in a contempt proceeding. *Id.* at 356.

Orders which form the basis for a contempt charge must "expressly and precisely" spell out the details of compliance in a way that "reasonable persons" will know exactly what actions are required or forbidden. *Id.* at 355. In the present case, we have concluded that the underlying orders are not sufficiently clear and unambiguous. It is unclear from the two orders what actions are required or forbidden. The ambiguity arises from the different terms contained in the two orders regarding contact between the parties. The

initial April 19 order prohibited all contact between Dr. Wilson and Ms. Lehmann and her children. This order was then incorporated into the August 1 order by adding a visitation schedule and designating how the parties' child was to be exchanged by the two parties but did not address the no contact provision. Thus, Dr. Wilson was both prohibited from contacting Ms. Lehmann and required to meet her weekly to exchange their child. These conflicting orders create an ambiguity and, therefore, they are not sufficient for a conviction of criminal contempt.

On appeal, Ms. Lehmann argues that the August 1 order only modifies the April 19 order to allow for the exchange of the child without modifying the no contact provision at all. Ms. Lehmann appears to understand the two orders as meaning no verbal communication between the two parties, regardless of other mandated events like exchanging their child. However, the April 19 order does not make this subtle distinction. The April 19 order specifically orders Mr. Wilson not to "contact [Ms. Lehmann or her minor children] either directly or indirectly, by phone, email, messages, mail or any other type of communication or contact." The order not only proscribed verbal communication with Ms. Lehmann, but also proscribed any contact at all with Ms. Lehmann. The order itself makes a distinction between communication and contact through the use of a disjunctive list ("communication or contact"). The subsequent order mandating Dr. Wilson to meet with Ms. Lehmann regularly creates an ambiguity regarding how Dr. Wilson is to both not contact Ms. Lehmann and meet with her regularly.

The August 1 order does not provide sufficient clarity as to what conduct Dr. Wilson was prevented from doing to support a finding of contempt. Orders underlying a finding of contempt must "leave no reasonable basis for doubt regarding their meaning." *Id.* at 356. Ms. Lehmann's interpretation of the orders does not resolve the ambiguity regarding what contact was allowed under the August 1 order. Courts are not to "go beyond the four corners of the order in contempt cases to clarify an ambiguity." *Scobey v. Scobey*, No. M2016-00963-COA-R3-CV, 2017 WL 4051085, at *5 (Tenn. Ct. App. Sept. 13, 2017). We are limited to the plain meaning as understood from the orders themselves.

In concluding that the orders at issue were not sufficiently clear to support a finding of contempt, we have considered not only the circumstances of the alleged violations, but also the circumstances surrounding the issuance of the orders and their audience. *See Furlong*, 370 S.W.3d at 339 (citing *Konvalinka*, 249 S.W.3d at 356) (requiring the application of this standard when evaluating whether an order is ambiguous). Indeed, some of the conduct complained of occurred at a mandated meeting between the two parties. It appears that the parties did not have a clear idea of what the orders required of them. This confusion was even shared by Ms. Lehmann and her counsel at trial.[3]

---

[3] Ms. Lehmann testified at trial that it was her belief that the August 1 order allowed only contact regarding the parties' child. It appears that this was her counsel's understanding of the orders as well. She has reversed her interpretation on appeal, asserting instead that the orders prevent any communication.

Construing the ambiguity in favor of Dr. Wilson, we find that the ambiguities are such that the orders cannot support a conviction of contempt. The determination that the order which was allegedly violated lacked specificity and was ambiguous requires a reversal of the convictions of contempt. *See Ross*, 2008 WL 5191329, at *6.

Because this issue is dispositive, we do not reach Dr. Wilson's remaining issues. In light of our decision to reverse the judgment of criminal contempt, any opinion concerning the other issues would be advisory in nature. *See Furlong*, 370 S.W.3d at 336. We also seek to "avoid deciding constitutional issues when a case can be resolved on non-constitutional grounds." *Haynes v. City of Pigeon Forge*, 883 S.W.2d 619, 620 (Tenn. Ct. App. 1994).

II.     Attorney's Fees and Costs on Appeal

We now turn to Ms. Lehmann's claim that she should be awarded her attorney's fees and not be taxed costs on appeal. As Tenn. Code Ann. § 36-3-617 (a)(1) does not support her request, we decline to award Ms. Lehmann her attorney's fees. Turning next to costs, because Dr. Wilson is the prevailing party, we would typically tax the costs on appeal to Ms. Lehmann. However, before we could assess costs against Ms. Lehmann, the statute and controlling authority requires us to make certain findings we are unprepared to make.

Under Tenn. Code Ann. § 36-3-617(a)(2) and controlling authority, before we could tax costs on appeal to Ms. Lehmann, we would have to make two findings by clear and convincing evidence. First, that the petitioner is not a domestic abuse victim, and second, that the petitioner knew that the allegation of domestic abuse, . . . was false at the time the petition was filed. *See Furlong*, 370 S.W.3d at 341 (holding that the statute requires making these findings by clear and convincing evidence before taxing costs on appeal against the petitioner for an order of protection). The record does not contain sufficient evidence for this Court to make these findings, therefore, we cannot tax the costs on appeal to Ms. Lehmann. We therefore decline to tax costs against either party.

CONCLUSION

The judgment of the chancery court is reversed. Neither party is taxed with the costs of this appeal.


 /s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

- 7 -