# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 19, 2011 Session

## JACQUELINE G. FURLONG v. KEVIN KEANE FURLONG

**Appeal from the Circuit Court for Knox County**
**No. 118972      Bill Swann, Judge**

---

**No. E2010-02456-COA-R3-CV-FILED-OCTOBER 14, 2011**

---

Kevin Keane Furlong ("Husband") is the estranged husband of Jacqueline G. Furlong ("Wife"). Wife secured an order of protection in Sevier County that generally prohibits Husband from committing any untoward act against Wife and having any contact with her. As later amended in the Knox County Circuit Court ("the trial court"), the order also states that Husband could come to the marital residence to repair Wife's automobile. In addition, the court identified two dated time periods, and, with respect to each period, specified which of the parties would have the use of the "inside" of the marital home and when they would have that use, and which would have the use of the "outside," *i.e.*, presumably the parties' realty surrounding the house, and when. When Husband came to the residence to repair Wife's automobile at 7:10 p.m., which, according to the order of protection, was arguably ten minutes beyond the time within which the vehicle was to be repaired, Wife filed a motion asking that he be held in contempt for not repairing the vehicle and for coming about her outside the allowed time frame. The trial court held Husband in criminal contempt, sentenced him to ten days in jail, and extended the order of protection for five years. He was not to be released from jail unless and until he complied with a statute requiring him to post a bond in the minimum amount of $2,500. He served his sentence and obtained a stay of the bond requirement pending appeal. Husband appeals challenging the finding of contempt as well as the constitutionality of the statutory bond requirement. The Tennessee Attorney General made an appearance on appeal to support the constitutionality of the statute. We reverse, in its entirety, the last order of protection and judgment of criminal contempt entered by the trial court on November 23, 2010. It is held for naught. In view of our reversal, we do not find it necessary or appropriate to reach the constitutional issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Lisa A. White, Knoxville, Tennessee, for the appellant, Kevin Keane Furlong.

Jane Kopp Morris, Knoxville, Tennessee, and W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellee, Jacqueline G. Furlong.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Associate Soliciter General; and Warren Jasper, Senior Counsel, General Civil Division, Office of the Attorney General, all of Nashville, Tennessee, for the appellee, State of Tennessee.

**OPINION**

I.

On December 18, 2009, Wife secured an order of protection against Husband in Sevier County. What was otherwise a generic order against abusing or stalking Wife contains a decree that requires Husband to provide Wife "the 2006 [Toyota] Prius currently in his possession. . . ." She subsequently filed a motion in the trial court asking that the Sevier County order be amended to make it a "no contact order with exclusive rights to [the marital] home [at] 7500 Deane Hill Dr. Knoxville, TN 37919." She alleged that she had received harassing telephone calls and text messages that made her "extremely afraid" of Husband.

On September 23, 2010, the trial court in Knox County entered an amended order by agreement of the parties.[1] The amended order provides that Husband "shall not come about" Wife and "shall not telephone, contact, or otherwise communicate" with Wife. The trial court's order is riddled with tedious directives. The parties were allowed to communicate "via e-mail or g-mail." The parties were ordered to "share the residence in accordance [with the following schedule]":

> The parties . . . shall cooperate in selling the home.
>
> Between October 5, 2010 and November 2, 2010, [Husband] shall be entitled to be at the outside of the marital home on Tuesdays, Wednesdays, Thursdays, and Fridays. [Wife] shall have exclusive possession of the interior of the marital home at all times during this period. [Wife] shall have exclusive use of

---

[1]Wife was represented by counsel when the terms of the order were negotiated and agreed to; Husband was not.

the interior and exterior of the home on Saturdays, Sundays, and Mondays.

After November 2, 2010 [Husband] shall be entitled to be both inside and outside of the marital home on Tuesdays, Wednesdays, Thursdays, and Fridays. [Wife] shall have possession of the home, inside and out, on Saturdays, Sundays, and Mondays.

\*    \*    \*

[Wife] shall provide the title to the camper on September 24, 2010. [Wife] shall leave the title in the front seat of the vehicle (Volvo) prior to the time [Husband] is scheduled to come and evaluate and repair her car.

[Wife] and [Husband] may text each [other] regarding the sale of the home . . . .

As particularly significant to the case now before us, the order also specifically decrees that "[Husband] shall be allowed to enter the driveway of the marital home tomorrow September 24, 2010 between the hours of 12:00 p.m. and 7:00 p.m. in order to evaluate and repair [Wife's] vehicle."

What happened on September 24, 2010, is the subject of this appeal. Wife filed a motion on September 27, 2010, asking that Husband be held in criminal contempt for violating the September 23, 2010, order in two respects. She alleged that:

1. On 09-24-10 [Husband] did not pick up the title to camper or repair the vehicle (Volvo) as specified in order of protection (case no. 118972) between the hours of 12:00 p.m. and 7:00 p.m. on September 24, 2010. Sara and Bill Reid drove me to my house (7500 Deane Hill Dr.) after 7p.m. where we found title to camper and key to car on front driver seat as was left (approx. 9:30 a.m.) and car not repaired.

2. On 09-24-10 [Husband] showed up driving in black Toyota Prius (driving down Deane Hill Dr. to our house at approx. 7:10 p.m.). Sara Reid noticed [Husband] in car first and told me to

call the police. I dialed 911 from my cell phone . . . to advise them [Husband] was present. . . .

* [Husband] also sent text to me at 7:19

Husband was ordered to appear and show cause why he should not be held in criminal contempt. A few days later, Wife filed an second motion asking that Husband be held in contempt for failing to pay the mortgage as ordered. Husband was ordered to show cause why he should not be held in criminal contempt for failing to timely make the mortgage payment.

The case was heard by a special master. There is no verbatim transcript of the testimony, only Husband's statement of the evidence. It states in pertinent part:

> As a preliminary matter, counsel for [Wife] gave notice to the Court that [Wife] was voluntarily non-suiting one of her two motions . . . , specifically the Motion [concerning the failure to make timely mortgage payments] which was filed . . . on the 7th day of October, 2010. The only Motion before the Court was filed on the 27th day of September, 2010, which related to events which allegedly occurred, on the 24th day of September, 2010, the day after the parties Agreed Order of Protection was entered.
>
> During opening statements, [Wife]'s counsel argued that the [Husband] had committed three violations of the Order of Protection: 1) failing to repair the car, 2) coming about [Wife], and 3) placing [Wife] in fear. Counsel for [Wife] specifically requested restitution to be paid to [Wife] for the costs to repair her car. . . .
>
> After opening arguments, [Wife] was called to testify. She testified that on the 24th day of September, 2010, she left her home located at 7500 Deane Hill Drive early in the morning. Before leaving, as required in the Order of Protection entered the day before, she left the title to the camper on the front seat of the Volvo which was to be repaired by [Husband]. She stayed away from the house all day. Later that evening, at approximately 7:10 p.m., [Wife] testified that she returned to the home accompanied by two friends, Mr. Bill Reid and Mrs. Sara

-4-

Reid. According to [Wife], Mr. Reid looked into the front seat of the Volvo and noticed the title to the camper still sitting on the seat. He opened the hood of the car as she and Mrs. Reid sat on a retaining wall nearby.

[Wife] testified that soon after Mr. Reid opened the hood of the Volvo, Mrs. Reid saw [Husband] driving on Deane Hill Drive. She called [Wife]'s attention to the car. Together, they saw [Husband] drive down the road, pass the house, turn around in the cul-de-sac, and leave. She stated that [Husband] looked at her. She further stated that seeing him placed her in fear since she did not expect him to be there. On direct, [Wife] testified that [Husband] did not stop at the house but may have slowed down. She conceded on cross-examination that a car must slow down in order to turn around in the cul-de-sac at the end of that road. She stated that [Husband] did not say anything to her nor did he non-verbally communicate to her, but clearly saw her.

Soon after seeing [Husband] on Deane Hill Drive, [Wife] stated that she received a text message from [Husband]. . . .

\* \* \*

On cross examination, [Wife] admitted that the day before the events in question, she agreed to an Order of Protection which allowed [Husband] to be "at the outside of the marital home" on a regular basis while she had exclusive possession of the inside of the home, and admitted on cross that this arrangement would potentially place [Husband] within a few feet of her on those days. . . . She explained that . . . she chose not to be at the house when [Husband] had possession of the exterior.

[Wife]'s counsel next called Mrs. Sara Reid to testify. Mrs. Reid testified [consistent with [Wife].] . . . . A few minutes [after Husband drove away], [Wife] received a text message, which Mrs. Reid also read on [Wife]'s cellular phone. All that Mrs. Reid recalled about the text message was that it said something like "did y'all fix it?" On cross, she did not recall the message saying anything more. She testified on direct that she and her husband purchased a battery for [Wife]'s car . . . .

-5-

At the end of [Wife]'s proof, defense counsel moved for a directed verdict based upon [Wife]'s failure to prove [Husband] willfully violated the Order of Protection beyond a reasonable doubt. The defense motion was denied by the Special Master.

[Husband] was called to testify on his own behalf. He testified that he sent two text messages on the date in question. The first message was sent at approximately 6:58 p.m. stating that he was late and could give [Wife] a loaner car. The second message . . . only asked whether the car was fixed. He sent that message after he saw her at the house with the car's hood open.

\* \* \*

[Husband], on direct, testified that he attempted to contact [Wife]'s counsel, Jane Morris, at her office at Legal Aid of East Tennessee once on the afternoon of September 23, 2010, and four additional times on September 24, 2010, to reschedule the car repair because he was sick, but that he never received a returned phone call despite leaving messages. He testified that he was attempting to abide by all of the terms of the court order, but had no attorney at that time to act as intermediary regarding the car repair. When he could not reach her attorney to reschedule despite several attempts, he drove to [Wife]'s residence and text messaged her twice about the car repair, once before arriving and once after leaving Deane Hill Drive. On cross examination, [Husband] admitted that he did not text message [Wife] until very close to the end of the time allotted to repair the car, that he did not repair the car as agreed in the Order of Protection, and that he did not pick up the title to the camper on the date in question.

In his testimony regarding driving on Deane Hill Drive on the 24th of September, 2010, [Husband] admitted that he turned onto that road at about 7:00 p.m. on that date. As he came over the blind hill on that street, he saw [Wife] and the Reids at the house. He testified that he was unable to divert his path since the road is a cul-de-sac and once a person crests the hill, and there is no alternative to passing [Wife]'s house. He testified that he did not stop, and slowed only as required to turn around

-6-

at the end of the road, then left the street quickly. He testified that he did not say or motion anything to [Wife]. . . .

At the conclusion of the evidence, the Special Master found that [Husband] had violated the Order of Protection once for coming about [Wife], and sentenced [Husband] to serve ten (10) days in the Knox County Sheriff's Detention facility. He did not find a violation for failure to repair the car and did not award damages for the cost of the battery or cost of the oil changes since no proof was offered that [Wife] had incurred those charges. He stated that although the two text messages sent by [Husband] could be violations of the Order since neither related to the sale of the house, he did not find those to be violations since they were not plead as violations by [Wife]. Special Master Elrod extended the Order of Protection for five years. After a thorough reading of the Court's file, which included the two prior Agreed Orders of Protection, the Special Master specifically struck all other provisions included in the earlier orders. He stated that it appeared that the parties' divorce was being tried through the Order of Protection. . . . Immediately after the hearing, [Husband] was handcuffed and taken to the Sheriff's holding cell.

After the Special Master's ruling, counsel for [Wife] took exception to the ruling that struck all provisions of the earlier Order of Protection related to the divorce, and asked that the matter be further heard by Judge Bill Swann. [Wife]'s counsel, [Wife] and defense counsel appeared in front of Judge Swann; however, [Husband] had already been removed from the courtroom by an officer and was unavailable to appear before Judge Swann.

\* \* \*

Defense counsel . . . questioned whether there was sufficient evidence to find even one violation when the Defendant was driving on a public roadway. . . .

\* \* \*

> Over objections of [Husband]'s counsel and at the request of [Wife]'s counsel, Judge Swann modified the Order of Protection to require that [Husband] pay the mortgage payment for the Deane Hill Drive residence, and awarded [Wife] exclusive possession of the home until otherwise addressed through the divorce court. . . .

(Underlining in original.)

The order finding Husband in criminal contempt, as signed by the special master and the trial court and entered on November 23, 2010, contains the following provisions:

> [Husband] is to be released from incarceration on 12-2-2010, if an[d] only if the bond required by Public Chapter 1094 of the Public Acts of 2010 has been posted. . . .
>
> *   *   *
>
> Because the order of protection was violated after July 1, 2010, Public Chapter 1094 of the Public Acts of 2010 requires that [Husband] post a bond until such time as the order of protection expires. The bond shall be the statutory minimum of $2,500. . . .
>
> Because the order of protection was violated, the court exercises its discretion to extend this order of protection for five years[2] from today's date.

(Footnote added.)

By the time Husband had served his sentence, his appointed counsel had filed a notice of appeal. Simultaneously with the filing of the notice of appeal, his counsel filed a motion asking that the court set a more reasonable bond pending appeal. The court found that "a bond in the amount of $500[] is sufficient for the purpose of obtaining the stay pending appeal." Husband posted the bond and was released. Nevertheless, the court's order makes

---

[2]Tenn. Code Ann. § 36-3-605(d) (2010) provides, in part, as follows:

> . . . If a respondent . . . is found to be in violation of the order [of protection], the court may extend the order of protection up to five (5) years. . . .

it clear that, unless the Court of Appeals or Supreme Court modifies the order on appeal, Husband will be required to post the $2,500 bond to avoid further incarceration on remand.

II.

Husband raises the following issues on appeal, the first and second of which we have quoted verbatim from his brief and the third and fourth we have paraphrased:

> 1. Whether the trial court erred when it found that [Husband] violated the Order of Protection while driving on a public road.
>
> 2. Whether the non-safety related provisions of the agreed Order of Protection are effectively unconscionable contractual obligations due to the coercive power of enforcement by one party through the Order of Protection.
>
> 3. Whether the statutory requirement of a $2500 cash bond is unconstitutional in violation of cruel and unusual punishment and excessive fines provisions of the U.S. Constitution Amendment VIII and the Tennessee Constitution Article 1 Section 16.
>
> 4. Whether the statutory requirement of a $2500 cash bond is a de facto punitive fine imposed in violation of the right to trial by jury.

III.

We find the first issue[3] to be dispositive and therefore do not reach the other issues. Because we reverse the judgment of criminal contempt, any opinion we would give concerning the other issues would be advisory in nature. "[O]ur courts will not render advisory opinions." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994)(*citing Super Flea Mkt. v. Olsen*, 677 S.W.2d 449, 451 (Tenn. 1984)). Also, we

---

[3]As the first issue is stated by Husband, it is arguably subject to a narrow interpretation, *i.e.*, whether being in a moving car on a public street can render one in violation of an order of protection with respect to an individual standing on adjacent private property. However, husband's brief reflects a broader interpretation of his issue, *i.e.*, whether his conduct on September 24, 2010, violated the order. Both sides address the broader issue, as will we.

-9-

"avoid deciding constitutional issues when a case can be resolved on non-constitutional grounds." *Haynes v. City of Pigeon Forge*, 883 S.W.2d 619, 620 (Tenn. Ct. App. 1994).

IV.

When we review a judgment of criminal contempt, we employ the four-element analysis set forth in *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346 (Tenn. 2008); but we review the factual findings pursuant to the standard of review for criminal convictions found at Tenn. R. App. 13(e). *See Ross v. Ross*, No. M2008-00594-COA-R3-CV, 2008 WL 5191329 at *5-6 (Tenn. Ct. App. M.S., filed Dec. 10, 2008). *Konvalinka* is a case involving civil contempt, but, with the noted exception of the standard for reviewing the sufficiency of the evidence, it is clear to us that the following analysis set out in *Konvalinka* applies to all contempt proceedings.

> The power to punish for contempt has long been regarded as essential to the protection and existence of the courts and the proper administration of justice. At common law, the contempt power was broad and undefined. Concerned about the potential abuse of this power, the Tennessee General Assembly, like its counterparts in other states, enacted statutes to define and limit the courts' power to punish for contempt. As a result, the courts' contempt power is now purely statutory.
>
> Tenn.Code Ann. § 16–1–103 (1994) currently provides that "[f]or the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." To give effect to this power, Tenn.Code Ann. §§ 29–9–101 to –108 (2000) further define the scope of the contempt power and the punishment and remedies for contemptuous acts. Of particular relevance to this case, Tenn.Code Ann. § 29–9–102(3) specifically empowers the courts to use their contempt powers in circumstances involving "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." This provision enables the courts to maintain the integrity of their orders.

*   *   *

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

The threshold issue in any contempt proceeding is whether the order alleged to have been violated is "lawful.". . . Naturally, the determination of whether a particular order is lawful is a question of law.

The second issue involves the clarity of the order alleged to have been violated. A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. The order must, therefore, be clear, specific, and unambiguous.

Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt. Orders need not be "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." They must, however, leave no reasonable basis for doubt regarding their meaning.

Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed. Ambiguities in an order alleged to have been violated should be interpreted in favor of the person facing the contempt charge. Determining whether an order is sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review.

The third issue focuses on whether the party facing the civil contempt charge actually violated the order. This issue is a factual one to be decided by the court without a jury. The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence. Thus, decisions regarding whether a person actually violated a court order should be reviewed in accordance with the standards in Tenn. R.App. P. 13(d).

The fourth issue focuses on the willfulness of the person alleged to have violated the order. The word "willfully" has been characterized as a word of many meanings whose construction depends on the context in which it appears. Most obviously, it differentiates between deliberate and unintended conduct. However, in criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose.

In the context of a civil contempt proceeding under Tenn.Code Ann. § 29–2–102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. . . . Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility. Thus, findings regarding "willfulness" should be reviewed in accordance with the Tenn. R.App. P. 13(d) standards.

*Konvalinka*, 249 S.W.3d at 354 -57 (citations, headings and footnotes omitted).

Part 6 of chapter 3 of title 36 of the Tennessee Code Annotated, focuses on orders of protections. Courts are informed by Tenn. Code Ann. § 36-3-610(a)(2010), that they may hold a person who violates an order of protection "in civil or criminal contempt and punish the defendant in accordance with the law." However, contempt proceedings based on violations of orders of protection are conducted pursuant to the rubric explained in *Konvalinka*. *See Cable v. Clemmons*, 36 S.W.3d 39, 43 (Tenn. 2001). Specifically, the elements of criminal contempt based on violation of a court order are found in Tenn. Code Ann. § 29-9-102(3). *Id*. This was also the statutory provision discussed in *Konvalinka*.

-12-

In *Ross v. Ross*, previously cited herein, this Court adopted and adapted the *Konvalinka* analysis to a criminal contempt conviction by working through the same four elements discussed in *Konvalinka*, but did so in view of the differing standard found at Tenn. R. App. P. 13(e) for reviewing a finding of guilt by a trial court in a criminal action. As articulated in *Ross*, when reviewing a trial court's finding of criminal contempt,

> the appellate courts do not review the evidence in a light favorable to the convicted person; nevertheless, it is our duty to reverse criminal contempt convictions when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt. On appeal, the convicted person bears the burden of overcoming the presumption of guilt.

> In determining the sufficiency of the convicting evidence, the appellate court does not re-weigh or re-evaluate the evidence. Nor may we substitute inferences for those drawn by the trier of fact from circumstantial evidence. To the contrary, a court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Therefore, this court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the relevant facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt.

*Id*. 2008 WL 5191329 at* 6 (citations and internal quotation marks omitted).

## V.

This appeal focuses on the second and third elements of contempt – the clarity of the order and the willfulness of the conduct. Husband argues that the amended protective order of September 23, 2010, is ambiguous because of the many tedious provisions, some of which state he could not "go about" Wife, some of which allow him to "go about" her in the sense that he is allowed to be on the outside of the house while she is inside, and one of which "required" him to be present to repair an automobile at a time when Wife could have been, but, as it happened, was not, present in the house. Husband also argues that the order is

-13-

ambiguous in that it does not specify that he has to complete the repairs and exit the driveway by 7:00 p.m., just that he is "allowed to *enter* the driveway . . . between the hours of 12:00 p.m. and 7:00 p.m." (Emphasis added.) Read literally, as long as he "enter[ed]" during the specified time period, he could stay there as long as he was working on Wife's vehicle.

Wife now argues, somewhat disingenuously in light of the contrary position taken by her at trial, that the order does not *require* Husband to repair the car; that it merely *allows* him to repair it. She also argues that the order is not at all ambiguous as it absolutely prohibits Husband from coming about her and carefully spells out some limited exceptions. When the language of the order is viewed in the context of the events of the evening of September 24, 2010 – which events resulted in Husband's conviction for criminal contempt – we are constrained to agree with Husband's "ambiguity" argument. Husband is correct that, while the order says he may "enter the driveway . . . between the hours of 12:00 p.m. and 7:00 p.m.," it does not specify how much time he has to make the repairs and exit the driveway. We also note that the language states unconditionally both that Husband is not to "come about" Wife and that he is to "share the residence" with her. One clause is not listed or arranged as an exception to the other.

It is undisputed that Husband was, at all times, inside his automobile. It is undisputed that his automobile never stopped and never left the public road. It is undisputed that Husband did not speak to Wife or make any threatening gestures toward her. It is undisputed that Husband's actions would have been entirely permissible under the order of protection if he had arrived ten minutes earlier. Husband's testimony went uncontested that he felt compelled by the order to at least make an appearance to repair the car, but arrived late because he fell sick earlier in the day and tried unsuccessfully to reschedule through Wife's counsel.[4] Wife's motion and the trial court's handling of the matter corroborate Husband's interpretation of the order as *requiring* him to repair the car. Wife's motion clearly shows that she moved to have Husband held in criminal contempt for his failure to repair the car on time. According to the statement of the evidence, the court based its refusal to find him in contempt on the "repair" issue, not on the fact that the order did not require him to repair the car, but rather on the fact that Wife did not prove that she sustained any expense in having it repaired.

Under the test articulated in **Konvalinka**, we hold that the order at issue was not sufficiently clear to sustain a conviction for its violation by the mere appearance on a city street ten minutes later than Husband undisputably could have been lawfully present in the driveway to repair an automobile. We must take into account not only the circumstances of the alleged violation, but also the circumstances surrounding the issuance of the order and

---

[4]Husband was unrepresented at the time.

the circumstances of the one to whom it is addressed. ***Konvalinka***, 249 S.W.3d at 356. We must construe any ambiguities in favor of Husband. ***Id***. In the end, the order must not leave any reasonable objective doubt concerning its meaning. ***Id***. The order must "spell[] out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." ***Id***. at 355. At the very least, the order at issue in the present case fails in this last respect because at 7:10 p.m. on the evening of September 24, 2010, Husband was reasonably unsure whether to go to Deane Hill Drive or stay away from Deane Hill Drive. As we have stated, his confusion was shared by Wife, who tried to prosecute him, both for coming about her and for not coming about her to repair the Volvo[5], and by the trial court which apparently entertained the possibility of contempt for not repairing the Volvo. To put this in perspective, we believe it is unlikely that a reasonable person in Husband's position would expect to be thrown in jail for simply driving on the street ten minutes after he had arguably been ordered to be in the driveway.

We could stop here because our determination that the order is ambiguous requires a reversal of the conviction. *See **Ross***, 2008 WL 5191329 at *6. However, it is appropriate to look also at whether there was proof sufficient to sustain a finding beyond a reasonable doubt that Husband acted willfully. ***Id***. According to ***Konvalinka***, "[i]n the criminal context, a willful act is one undertaken for a bad purpose." 249 S.W.3d at 357. In light of the ambiguities in the protective order which (1) suggest that to "come about" Wife consists of something other than merely being present on or close to the residence at Deane Hill Drive and (2) suggest that Husband was required to repair the Volvo on the day in question, we believe that, even if we construe all permissible inferences in favor of a conviction, the evidence falls short of showing that Husband acted with a bad purpose. We can think of two possibilities indicative of a bad purpose, neither of which is suggested by the facts in this record. It is certainly possible that Husband was lying and had no intention of repairing the vehicle; maybe he simply wanted to irritate Wife and make his presence known by driving by the property. However, for this to be true beyond a reasonable doubt, there should be some fact or circumstance that suggests he knew she would be in a position to be irritated. In other words, there should be something to suggest that Husband had reason to believe Wife would be in a position to see him driving on Deane Hill Drive. No such evidence has been pointed out to us and we know of none. There is nothing to suggest that he had any reason to believe that Wife would be home and nothing to suggest that he had any reason to believe that, if she was home, she would be on the outside of the house in a position to see him as he drove by. The other possibility is that Husband drove to the residence with the intention of confronting Wife and doing her harm. A verdict based on such a premise with the record before us would be sheer speculation. It appears highly unlikely that Husband

---

[5]Wife testified that she chose to not be home during the hours Husband was allowed to be at the Deane Hill Drive property. However, we know of no evidence that Husband knew of her plan.

would carry out such an evil scheme within ten minutes of the time he was expected to be at the residence to repair an automobile. We are accustomed to reviewing trial court judgments based on a preponderance of the evidence and we are convinced that the evidence in this case does not even reach that point, much less the standard of proof beyond a reasonable doubt. We hold that the record does not contain evidence to support a finding beyond a reasonable doubt that Husband willfully violated the order.

As a consequence of our dual holdings of (1) a lack of clarity in the amended order of protection and (2) the failure of the proof to show Husband's guilt beyond a reasonable doubt, the order of the trial court entered November 23, 2010, must be reversed in its entirety.

VI.

We turn now to the unraised, but necessary-to-reach, issue of the taxing of costs on appeal.

As previously stated, we have concluded that the order of the trial court finding Husband guilty of criminal contempt and extending the order of protection for five years must be reversed. Thus, it is clear that Husband is the prevailing party on this appeal, a fact that would normally prompt us to tax the costs on appeal to Wife. However, we do not believe the facts of this case are such as to provide us with the statutory authority to do so.

As recently amended by Chapter 402 of the Public Acts of 2011, effective June 6, 2011, Tenn. Code Ann. § 36-3-617(a) provides as follows:

> (1) Notwithstanding any other law to the contrary, no domestic abuse victim, stalking victim or sexual assault victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, after the hearing on the petition, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent.
>
> (2) If the court does not issue or extend an order of protection, the court may assess all court costs, filing fees, litigation taxes

and attorney fees against the petitioner *if the court makes the following finding by clear and convincing evidence*:

(a) The petitioner is not a domestic abuse victim, stalking victim or sexual assault victim and that such determination is not based on the fact that the petitioner requested that the petition be dismissed, failed to attend the hearing or incorrectly filled out the petition; and

(b) *The petitioner knew that the allegation of domestic abuse*, stalking, or sexual assault *was false at the time the petition was filed.*

(Emphasis added.) Under the statute, before we could tax the costs on appeal to Wife, we would have to make several findings, one of which is that there is "clear and convincing evidence . . . [t]he petitioner knew that the allegation of domestic abuse, . . . was false at the time the petition was filed." We have already held that the amended order of protection is so lacking in clarity as to warrant our holding that Husband could not be held to have intentionally violated it. That same lack of clarity now compels us to hold that we cannot find clear and convincing evidence that Wife knew her "allegation of domestic abuse . . . was false" when she filed her motion for contempt. Because we cannot make this required finding with respect to Wife's conduct, we cannot tax the costs on appeal to her.

VII.

The order of protection entered by the trial court on November 23, 2010, that, among other things, (1) found and held Husband in criminal contempt and (2) extended the order of protection for five years, is reversed in its entirety and held for naught. Neither party is taxed with the costs on appeal. This case is remanded to the trial court for collection of costs assessed at that level.

_____
CHARLES D. SUSANO, JR., JUDGE