IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 5, 2024 Session

## JAMES ELTON GILLIES ET AL. v. REBECCA NOELLE MITCHELL GILLIES

**Appeal from the Juvenile Court for Warren County**
**No. JV-1412    Ryan J. Moore, Judge**

_____

### No. M2023-00784-COA-R3-JV

_____

Father was held in criminal contempt for withholding visitation from Grandmother. The trial court found 28 counts of contempt and imposed a sentence of 280 days. The trial court also revoked the suspension of a prior 100-day sentence and ordered that sentence to be served consecutively to the 280 days. We conclude that because the visitation was withheld while an order of protection prohibiting contact between the child and Grandmother was in place, the trial court's findings and the evidence presented are insufficient to support a finding that Father acted willfully. Accordingly, we reverse the finding of contempt and the revocation of the suspended sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed;**
**Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Kelsy A. Miller, Cookeville, Tennessee, for the appellant, James Elton Gillies.

Heather G. Parker, Murfreesboro, Tennessee, for the appellee, Karen Dunlap Gillies.

### OPINION

### I.

James Elton Gillies (Father) withheld visitation with a minor child from Karen Dunlap Gillies (Grandmother). The trial court found Father in contempt for doing so. Having made this determination, the trial court imposed a 280-day sentence (ten days each

for 28 counts of contempt), revoked the suspension of a prior 100-day sentence, and ordered the two sentences to be served consecutively for a total of 380 days of imprisonment for criminal contempt. Father had previously obtained an order of protection from an Illinois state court prohibiting contact between the child and Grandmother based upon allegations of sexual abuse against Grandmother, and this order of protection remained in place during the time period in which Father withheld visitation. Accordingly, he appeals, asserting error by the trial court in finding him in contempt for withholding visitation under these circumstances.

The minor child was born in 2014. While it is not clear from the record how Mother's relationship with the child was severed,[1] Father and Grandmother, who is Father's mother, sought and were granted joint custody in 2018. Father was in the military, and the paternal Grandmother was the child's primary caregiver for a period of time, acting as a mother figure to the child. According to Grandmother's filings, in 2019, Father took the child and relocated to Georgia. The parties entered an agreed order in December 2019, allowing Grandmother visitation every other weekend and some holidays and securing the parties' rights to telephone the child during visitation. Compliance with this schedule was apparently short-lived.

In a contempt petition, Grandmother asserted that Father informed her in February 2020 that he was moving again, did not disclose his new location, and stated that he would no longer adhere to the visitation schedule delineated in the court order. Grandmother moved for contempt based on the denial of visitation. The trial court held Father in contempt on one count, although, at Grandmother's request, the court did not impose any jail sentence. Also in a contempt petition, Grandmother asserts that Father made his first unfounded accusation of sexual abuse against her in the summer of 2020, five days before this initial finding of one count of contempt against Father. Grandmother's contempt petition alleges that DCS concluded in August 2020 that Father's allegations of abuse were unfounded and unsubstantiated.

In December 2020, the juvenile court entered a new order governing custody between Grandmother, who remained in Tennessee, and Father, who lived in Illinois. Under the new order, Grandmother was granted visitation during the child's school holidays, including spring break, fall break, part of Christmas break, and for alternating two-week periods in the summer. The court denied Father's request to transfer jurisdiction to Illinois, concluding that "Grandmother remains a resident of Tennessee, and this Court maintains exclusive, continuing jurisdiction."

---

[1] Mother is the named party in the style of this case. Father's brief asserts that Mother is deceased, but Father's counsel stated at the hearing that Mother was "either deceased or she was on drugs or something along those lines."

In July 2021, Grandmother exercised her court-ordered visitation and returned the child to Father. The child was scheduled to be returned to Grandmother on August 8, 2021. However, on August 4, 2021, Father filed his first petition for an order of protection in Illinois. Father grounded his petition on multiple bases. One, Father alleged that the child reported to her Illinois counselor that she was abused and inappropriately touched during her last visit with Grandmother. Two, Father alleged the child told her stepmother that Grandmother had touched her inappropriately. Three, Father alleged that while the child was staying with Grandmother, she had used a "safe word" during a phone call with Father, indicating she needed help. Four, Father alleged he had called law enforcement for a wellness check and that the wellness check found that the child reported she had been inappropriately touched by Grandmother. The Illinois court granted the order of protection, decreeing that visitation between Grandmother and the child was "suspended until further order of the court."

On August 20, 2021, Grandmother filed a petition for contempt, alleging 38 counts of contempt based on Father's withholding of Grandmother's visitation on August 8-17 and based on missed telephone calls. Grandmother sought a separate finding of contempt for each day the child was absent during Grandmother's visitation and for each week that Father allegedly refused to allow "meaningful" telephone calls from January through August 2021. The hearing on the contempt petition was stayed pending resolution of the order of protection in Illinois. The order of protection was dismissed on January 6, 2022, "nunc pro tunc to 08/04/2021."

Grandmother then amended the petition for contempt, alleging in 94 counts that Father had withheld weekly calls, that he had withheld visitation during the summer and winter, while the order of protection was in place, and also that Father had withheld visitation during nine days of spring break, which occurred after dismissal of the order of protection. The amended petition charged each day that the child did not visit during spring break as a separate count.

The petition was heard on June 6, 2022.[2] Observing that an order of protection from Illinois was in place during the times when Father withheld visitation in the summer of 2021 and during winter break of 2021, the court concluded it was "reluctant" to find him in contempt based on these actions. However, regarding the nine days of visitation over spring break 2022, during which time no such order was in place, the trial court found beyond a reasonable doubt that Father's withholding of visitation was willful and intentional, and that he had the ability to comply with the court-ordered visitation. The court also imposed one finding of contempt based on Father's denial of telephone contact.

Without discussion of sentencing principles, the juvenile court determined that Father would be sentenced to ten days of incarceration on each count and that the counts

___

[2] This hearing is not part of the record.

would be served consecutively for a total of 100 days of incarceration. The court suspended the sentence "indefinitely pending [Father's] future compliance with orders of this Court," and it imposed a $500 fine.

The court found that, while Father made claims of inappropriate sexual contact, "this matter has been investigated by the Children's Advocacy Center, law enforcement officers and the Department of Children's Services. These agencies have investigated each report, conducted forensic interviews, and have found no indication that [Grandmother] has acted inappropriately towards this child." Noting that the guardian ad litem had previously recommended that the child live primarily with Grandmother, the court observed that it had allowed Father to have custody "with the understanding that we were going to follow the orders of the Court and keep up the relationship between the child and her Grandmother."

The court indicated that "if [Father] in the future wants relief from orders of this Court, then he should file pleadings with this Court asking for relief. He cannot take it upon himself to violate Court orders." The court set out a summer visitation schedule in its contempt order, awarding Grandmother time with the child in June, on July 3 to 17, and on July 31 to August 14, 2022, using the following language: "[the child] shall be returned to [Grandmother] on Sunday July 3 at 4:00 p.m.; she shall be returned to [Father] on Sunday, July 17 at 1:30 p.m.; she shall be returned to [Grandmother] on Sunday July 31 at 4:00 p.m.; she shall be returned to [Father] on Sunday August 14 at 1:30 p.m."

The court set a hearing on August 15, 2022, "for a review to determine whether [Father] has complied with the summer visitation as ordered." The court noted it would at that time review the suspension of the sentence and Grandmother's request for attorney's fees. Observing that the December 15, 2020 order remained in force, the court stated it would also address compensatory time for the missed spring break visitation at the August hearing.

The contempt order related to the missed spring break 2022 visitation was not signed by the judge or filed until July 5, 2022. In the intervening time, however, Father again sought an order of protection and again denied Grandmother visitation. On July 1, 2022, two days before Grandmother's next scheduled visitation and prior to the entry of the court's written order, Father again obtained an order of protection in Illinois. In the petition, Father alleged that the child had returned from visitation with Grandmother and had disclosed information to her counselor which caused the counselor to contact Tennessee DCS. He stated that an Illinois caseworker told him that the case had been transferred to Illinois and that the child "was to have no contact with [Grandmother], who is the alleged perpetrator." Father alleged in the petition for the order of protection that he was threatened with contempt if he failed to produce the child for visitation and wanted "protection till [the Illinois Department of Children and Family Services] is finished with the investigation."

- 4 -

Father moved to continue the August hearing, which was to determine his compliance and whether his sentence would continue to be suspended, and he also filed a "Motion for the Courts to Communicate." Grandmother filed another motion for contempt on August 15, 2022, requesting the court hold Father in contempt for each day of missed visitation, for a total of 28 counts of contempt. The court granted the motion to continue pending the resolution of the Illinois order of protection, but it concluded that it was "not necessary to communicate with the Order of Protection Judge in Illinois, as that Court will only address these issues on a temporary basis, even if the Order of Protection is granted." It referenced and reaffirmed its December 2020 finding that it had continuing jurisdiction based on Grandmother's continued residence in the state. Noting that the alleged abuse from the child's June 2022 visit to Grandmother occurred in Tennessee, the court referred the matter of alleged abuse to the Tennessee Department of Children's Services. Grandmother was awarded some of her attorney's fees.

On September 26, 2022, the report of abuse against Grandmother was determined to be "unfounded" by the Illinois DFCS. On November 3, 2022, the order of protection was dismissed "nunc pro tunc" with a note that "the Tennessee court is better suited and has the resources and tools to litigate this case."

The juvenile court, with a new judge presiding, held a hearing on March 29, 2023, to address the August 2022 contempt petition. Father did not personally appear at the hearing, and Father's counsel offered a doctor's note stating that Father had injured his ankle and was unable to travel. Counsel asked for a continuance based on the doctor's note. After some preliminary argument regarding the family dynamics, the court questioned Father's absence, stating, "He needs to be here to defend it today." When asked after the close of proof why Father did not attend via zoom, counsel responded, "I could have called him. I didn't even — I was embarrassed to ask you if I could call him on a cell phone, you know, with it being such a late doctor's note."

Father's counsel again moved for the two courts to discuss jurisdiction, stating that Father was attempting to domesticate and modify the plan in Illinois. Grandmother's counsel noted that Grandmother had no knowledge of pending litigation in Illinois. The court stated it was happy to communicate with the Illinois court but that the contempt matter would more properly be heard in Tennessee.

During the hearing, the parties received a notification from DCS that the allegations against Grandmother that formed the basis of Father's 2022 order of protection were deemed unfounded and unsubstantiated. The court noted that the child advocacy center, a prior guardian ad litem, "[o]ur most zealous DCS case manager," and Illinois DCFS had all found that allegations of abuse were unfounded, and it concluded, "I don't see how you could represent that something is going on here, you know, with her being abused, after all of these entities have said that nothing is going on."

- 5 -

Grandmother was the only witness to testify at the hearing, and she testified very briefly that she did not receive the child for 28 days of court-ordered visitation in the summer of 2022. She agreed that an order of protection was in place during the entire time of the missed visitation. Grandmother's attorney asked whether she felt "it's appropriate that a judge find your son guilty of 28 counts of contempt or just two counts of contempt," and Grandmother stated she would defer to the court.

Despite Grandmother's counsel raising the issue, counsel for Father did not present any argument regarding the units of prosecution. Counsel for Father primarily argued that a finding of contempt could not be upheld because the order of protection preventing visitation was in place at the time and his actions were accordingly not willful. Father's counsel also argued that sending Father to jail for 280 days would not be in the child's best interest.

The trial court held Father in contempt, finding "beyond a reasonable doubt that [Father] willfully violated orders of this Court such that he is in criminal contempt of these orders" and concluding that Father's action was willful and that he had the ability to comply with the order. Finding that Grandmother was deprived of 28 days of summer visitation, the court found Father guilty of 28 counts of criminal contempt. Without referencing Tennessee's sentencing principles, the court concluded that it would sentence Father to ten days for each count and that the sentences were to be served consecutively. After announcing the sentence, the court addressed Grandmother and stated she had "one last chance to say you don't want him to serve that many days."

Regarding the suspension of the prior 100-day sentence, the court stated, "Based upon the Court's finding above that Mr. Gillies was in willful contempt for failure to allow summer visitation in 2022, the Court finds that this 100 day sentence must also be served." The court ordered this sentence to be served consecutively to the newly imposed contempt sentence, for a total of 380 days. The court stated that Father could "file a motion for early release at some reasonable point in the future."

The court imposed a schedule for Grandmother's compensatory visitation for the missed days and ordered Father to be responsible for the Child's transportation regardless of whether he was imprisoned. It awarded attorney's fees to Grandmother in the amount of $1,500.

On appeal, Father asserts that the trial court's contempt order impermissibly functioned to deny him the option of seeking relief from the Illinois court. He also asserts that the trial court improperly refused to consult with the Illinois court regarding jurisdiction. Additionally, Father challenges the trial court's finding that he was in contempt, noting the order of protection that was in place at the time visitation was withheld, and he challenges the sentences imposed and the revocation of the suspended

sentence that followed as a consequence. Grandmother asserts the trial court did not err and seeks her attorney's fees on appeal.

## II.

In a thinly developed argument, Father contends that the trial court impermissibly denied him the right to seek relief from Illinois courts. He asserts that the trial court's finding of contempt entails a finding that Father was prohibited from seeking relief in the courts of Illinois. We conclude Father's argument is mistaken at a foundational level.

Simply stated, the trial court did not hold Father in contempt for filing for an order of protection in Illinois; instead, it held Father in contempt for failing to deliver the child to Grandmother for her court-ordered visitation. There is no indication that the trial court believed Father was prohibited from seeking relief in Illinois. Contrary to Father's contention, after Father obtained the 2022 order of protection in Illinois, the Tennessee court continued the proceedings pending the outcome of the Illinois action. The two contempt orders intertwined with the issues in this appeal relate to the withholding of visitation over spring break 2022 and in July and August 2022, respectively, and are expressly tied to the withholding of visitation itself rather than to the act of seeking emergency relief in the Illinois courts.

## III.

Father also challenges the trial court's decision not to consult the Illinois court regarding jurisdiction. Father acknowledges that this decision was discretionary. *See* Tenn. Code Ann. § 36-6-213 ("A court of this state *may* communicate with a court in another state concerning a proceeding arising under this part." (emphasis added)). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

Father speculates that "a more complete resolution could have been achieved" had the courts communicated. Father, however, does not develop an argument in his briefing as to how the trial court's decision applied an incorrect legal standard, reached an illogical decision, was based on a clearly erroneous assessment of the evidence, or employed reasoning causing an injustice to him. *See id.* "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). Father's argument here is simply too conclusory for this court to consider this matter without assuming the role of an advocate on Father's behalf regarding this issue. That we cannot do.

## IV.

At the epicenter of this appeal, Father challenges the trial court's finding that he was willfully in contempt of a court order by withholding visitation to Grandmother during July and August of 2022. Father argues that this finding of contempt is an illogical and unsupported conclusion because at the time he was withholding visitation he was acting in compliance with the Illinois order of protection, which prohibited contact between Grandmother and the child. Father also contends that finding him in contempt was not in the child's best interest, although he offers no legal support for the proposition that criminal contempt hinges on the best interest of the child. He further submits he was not acting "with a bad purpose" as required for a finding of willfulness. We understand Father's argument as a challenge to the sufficiency of the evidence supporting the trial court's finding of criminal contempt.

A party may be found in criminal contempt for the willful disobedience of a lawful court order. Tenn. Code Ann. § 29-9-102(3). A party held in contempt may be subjected to a fine of up to $50 in circuit, chancery, or appellate courts, a fine of up to $10 in other courts, confinement for ten days, or confinement accompanied by a fine. Tenn. Code Ann. § 29-9-103(b). The contemnor is entitled to a presumption of innocence, and the prosecution bears the burden of proving guilt beyond a reasonable doubt. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006).

However, once an adjudication of guilt has been entered on a count alleging criminal contempt, "the contemnor loses the presumption of innocence and bears the burden of overcoming the presumption of guilt on appeal." *State v. Beeler*, 387 S.W.3d 511, 519 (Tenn. 2012). The reviewing court gives the prevailing party the strongest legitimate view of the evidence and all reasonable and legitimate inferences to be drawn from the evidence. *Furlong v. Furlong*, 370 S.W.3d 329, 338 (Tenn. Ct. App. 2011) (quoting *Ross v. Ross*, No. M2008-00594-COA-R3-CV, 2008 WL 5191329, at *6 (Tenn. Ct. App. Dec. 10, 2008)). On appeal, this court determines whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Cottingham*, 193 S.W.3d at 538; *Furlong*, 370 S.W.3d at 338. Criminal contempt requires proof beyond a reasonable doubt of the following elements:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Furlong*, 370 S.W.3d at 336-37 (quoting *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008), and applying its standards in the context of criminal contempt).

Here, Father challenges the determination that his conduct was willful. "In the context of criminal contempt, willfulness has two elements: (1) intentional conduct and (2) a culpable state of mind." *Neely v. Neely*, No. E2017-01807-COA-R3-CV, 2019 WL 2929074, at *2 (Tenn. Ct. App. July 8, 2019). Willful misconduct for criminal contempt "entails an *intentional* violation of a known duty." *Beeler*, 387 S.W.3d at 523; *see* Tenn. Code Ann. § 39-11-302(a) ("'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result."). Accordingly, "[i]n the criminal context, a willful act is one undertaken for a bad purpose," *Furlong*, 370 S.W.3d at 340 (quoting *Konvalinka*, 249 S.W.3d at 357), or with the specific intent to do some forbidden act. *Konvalinka*, 249 S.W.3d at 357 (citing *State v. Braden*, 867 S.W.2d 750 (Tenn. Crim. App. 1993), for the proposition that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids"); *see Beeler*, 387 S.W.3d at 523-24 (finding an attorney's act willful when it was "his conscious objective or desire to engage in the conduct").

Father in this case was faced with two court orders that were in direct conflict with one another. One court prohibited contact between the child and Grandmother, and the other court ordered the child to have visitation with Grandmother. These orders were diametrically opposed, and compliance with both was an impossibility. Contempt cannot hinge on an order that was impossible for the contemnor to obey. *State ex rel. Groesse v. Sumner*, 582 S.W.3d 241, 263 (Tenn. Ct. App. 2019) (noting in civil contempt action that "[h]olding an individual in contempt is an available remedy 'only when the individual has the ability to comply with the order at the time of the contempt hearing.'" (quoting *Moore v. Moore*, No. M2004-00394-COA-R3-CV, 2007 WL 2456694, at *3 (Tenn. Ct. App. Aug. 29, 2007)); *Simpkins v. Simpkins*, 374 S.W.3d 413, 420 (Tenn. Ct. App. 2012) ("If the defendant is accused of failing to make payments required by order or decree, the prosecution must prove beyond a reasonable doubt that the person charged with contempt had the ability to pay support at the time it was due and that the failure to pay was willful."); *see also Ash Park, LLC v. Alexander & Bishop, Ltd.*, 783 N.W.2d 294, 310 (Wis. 2010) ("Just as impossibility is a defense to an order for specific performance, inability to obey that order is a defense to contempt."); *Matter of Pinckard's Estate*, 417 N.E.2d 1360, 1369 (Ill. App. Ct. 1980) ("A person cannot be held in contempt for failure to comply with an order that is impossible for him to obey when such impossibility has occurred through no fault of his own.").

Grandmother sensibly argues, however, that Father "cannot willfully disable himself from obeying an order of court and then set up his inability as a defense to a charge of contempt." *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993) (quoting *Gossett v. Gossett*, 241 S.W.2d 934, 936 (Tenn. Ct. App. 1951), and upholding contempt where a father "had intentionally placed himself in a position in which he would be unable to comply" with grandparent visitation by agreeing with his wife that she would take the

children to a location which she would not disclose to him). Grandmother asserts that Father sought the order of protection for the purpose of thwarting his ability to produce the child.

We do not necessarily disagree with Grandmother's contention. However, this appeal does not raise the question of whether an order of protection pursued in bad faith for the purpose of denying a party her court-ordered visitation constitutes willful conduct. The problem with Grandmother's argument is at a foundational level. The trial court never actually determined that Father was acting in bad faith in procuring the order of protection. Father's petition for the order of protection reflects that the child made statements that engendered concern in her stepmother and counselor. While the juvenile court quite properly found that Grandmother had engaged in no misconduct based on the conclusions of numerous investigations, there was no evidence introduced that Father fabricated the allegations, that he coached the child into making false disclosures, or that he sought the order in bad faith. The actual evidence presented to the trial court, which is fairly limited, establishes that Father withheld visitation from Grandmother, that there was an existing Tennessee court order that provided for visitation with Grandmother, that there was an Illinois court order that prohibited such contact, and that various state investigative authorities had not substantiated the prior or current sexual abuse allegations against Grandmother.

From the evidence that was presented, there was not an adequate factual basis in the record to conclude that Father was not simply properly reacting to an allegation that was made by the child, even if that allegation was not true. Father's petitions are grounded in what he indicates are assertions that the child made to various individuals indicating sexual abuse by Grandmother. Fatally for Grandmother's line of argument, the juvenile court never made a factual finding that Father was acting in bad faith in pursuing a protective order in Illinois. Father may well have acted with a completely improper purpose, manipulating the judicial process in presenting knowingly false allegations of sexual abuse to Illinois courts to avoid Grandmother's visitation, and such conduct may well be a basis for concluding that Father willfully violated the trial court's visitation order. But, given the lack of actual evidentiary development before the trial court on this matter and the absence of any such finding from the trial court, we cannot uphold the finding of contempt on this basis.

To reiterate, this decision should not be understood to mean that a trial court cannot take appropriate action to curtail a party's effort to subvert the judicial process by maliciously filing for a protective order based upon false reports of sexual abuse in order to thwart visitation. Nor is this decision a reflection of a determination that Father did not act in bad faith. Instead, there is simply no such finding by the trial court to support a conclusion that Father was acting willfully in violation of a court order by seeking an order of protection as a means of thwarting visitation in this case. Furthermore, the record, which is thin in terms of actual evidence presented, does not establish that Father fabricated or

maliciously procured the allegations that are the basis of the order of protection. Accordingly, we cannot say that Father willfully disabled himself from obeying the court's order regarding visitation.

Returning to the foundation of Father's argument, the Illinois order of protection prohibited contact between the child and Grandmother. The trial court did not make a finding that Father sought the order merely for the purpose of thwarting visitation and the evidence was not adequately developed on this point. Because a valid order of protection was in place prohibiting contact between Grandmother and the child, we conclude that the juvenile court erred in finding that Father acted willfully, as complying with both orders[3] was impossible. The trial court and Grandmother *may* have presumed that Father acted willfully with bad faith in pursuing a protective order, but Grandmother did not present the evidence to establish that and the trial court did not find that. Accordingly, given this deficiency as to mens rea, the finding of 28 counts of contempt and the accompanying punishments must be reversed.[4]

---

[3] We note that the order that is the basis for the contempt finding had not been filed at the time Father first failed to deliver the child on July 3, 2022. The underlying June 2022 hearing is not part of the record. The existence of a "clear, specific, and unambiguous" order is an element of criminal contempt. *Furlong*, 370 S.W.3d at 336-37 (quoting *Konvalinka*, 249 S.W.3d at 354-55). Because we have determined in any case that there was insufficient evidence of the element of willfulness, we do not address the effect of the late-filed order in this case.

[4] There are a wide variety of complexities that arise when criminal contempt is addressed in the context of civil litigation, and this case implicates three such complexities. These three include (1) conducting criminal contempt trial proceedings in the absence of the physical presence of a defendant, (2) constitutional safeguards regarding double jeopardy, and (3) imposition of sentencing without engaging with Tennessee's principles of criminal sentencing.

Regarding the physical presence of a defendant, Father was not present for the contempt trial. Father's attorney presented a medical excuse, stating that Father had injured his ankle and was unable to travel from Illinois. Father asked for a continuance, but the trial nevertheless proceeded, and Father was held in contempt in absentia. In addition to potential constitutional safeguards, under Tennessee Rule of Criminal Procedure 43, those charged with criminal offenses have a right to be present at trial. *See Yates v. Yates*, No. M2008-00552-COA-R3-CV, 2009 WL 1470465, at *8-9 (Tenn. Ct. App. May 26, 2009). The trial court proceeded without Father present and without fully engaging with the issue of whether doing so was permissible.

Additionally, the circumstances of this case potentially implicate concerns related to the constitutional safeguard against double jeopardy. Among the protections afforded by the constitutional prohibition upon double jeopardy is a "protection against multiple punishments for the same offense." *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012). Where there are multiple convictions for the "same offense," this constitutional safeguard raises issues in connection with understanding what constitutes the unit of prosecution. *Id*. at 543. Interestingly, Grandmother's counsel noted the unit of prosecution matter before the trial court, asking whether the two-week periods in the summer of 2022 should be two offenses, based upon the two time periods during which Father withheld visitation, or 28 based on separate offense for each day. Grandmother in her appellate brief describes the underlying contempt as constituting "four separate instances of criminal conduct," presumably referring to missed visitation during spring break 2021, the two two-week periods in the summer of 2022, and failures with regard to telephone calls. Father,

V.

Father also asserts that the trial court's decision to order confinement for the previously suspended sentence should be reversed because the determination depended on the finding of contempt related to the time period in which the 2022 order of protection was in effect.[5]  Father did not challenge on appeal the previous finding of ten counts of contempt, related to the withheld spring break 2022 visitation, as to which the trial court previously suspended the sentence.  In this appeal, Father focuses on the revocation of the suspension and imposition of the sentence.

When a contemnor has violated the terms of a suspended sentence, the trial court may revoke the contemnor's probation associated with a suspended sentence and reinstate the original sentence.  *Baker v. Baker*, No. M2010-01806-COA-R3-CV, 2012 WL 764918, *11 (Tenn. Ct. App. Mar. 9, 2012) (citing *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005)); *see* Tenn. Code Ann. §§ 40-35-310(a), -311(e)(1).  We note that part of the right to due process in probation revocation proceedings is the right to written notice of the claimed violations of the suspended sentence.  *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)).  Generally, "[t]he revocation of probation based on grounds not alleged and noticed to the defendant is a violation of due process."  *State v. Chad Allen Conyers*, No. E2004-00360-CCA-R3-CD, 2005 WL 551940, at *4 (Tenn. Crim. App. Mar. 9, 2005).  If the conditions of probation are violated, the trial court may revoke the suspended sentence and either order the execution of the original sentence or impose another penalty.  *Baker*, 2012 WL 764918, at *11-12.  The imposition of a sentence for the violation of a suspended sentence is a separate exercise of discretion.  *Id.* at *12.

---

however, has not pursued the double jeopardy issue at trial or on appeal, *see State v. Harbison*, 539 S.W.3d 149, 164 (Tenn. 2018) (explaining that double jeopardy violations are capable of being waived); *Baker v. State*, 417 S.W.3d 428, 439 (Tenn. 2013) (holding that post-conviction relief is not available from ineffective assistance of counsel in a criminal contempt proceeding), and the trial court did not engage with the issue when Grandmother raised it.

Also, the trial court did not engage with the principles of sentencing in the present case in deciding to impose consecutive sentencing or in addressing its imposition of the maximum sentence allowable for each count of criminal contempt, raising potential concerns in connection with the sentence.

It is, however, ultimately unnecessary for this court to journey into the depths of these potential complications in the present case.  Because we have determined the underlying convictions are not supported by the trial court's findings or the record, it is unnecessary to determine whether the convictions would be impermissible based upon Father's absence from the trial, whether some number of the convictions may violate double jeopardy, or whether the trial court erred with its imposition of a consecutive sentence at the maximum in the present case.

[5] Grandmother asserts that this issue is waived.  However, Father's statement of the issues refers to error in "lifting the stay on a previous sentence of contempt," and he states that the court erred in finding that the contempt "triggered" the prior sentence.

- 12 -

In this case, the revocation of the suspended sentence was based on Father willfully disobeying the custody order while the Illinois order of protection was in place. Accordingly, the reversal of the finding of willful disobedience necessarily implicates the sufficiency of the evidence upholding the revocation of the suspended sentence. We conclude that the court erred in revoking the suspended sentence on this basis. Furthermore, the notice that Grandmother provided alleging a violation of the terms of the suspended sentence did not list which of Father's actions amounted to a violation. Instead, it merely recited that the sentence had been suspended "pending his future compliance with orders of this Court, which he almost immediately violated."

Because the initial finding of ten counts of contempt and accompanying sentence were not appealed, the holding that Father committed ten counts of contempt remains in place. Nevertheless, we reverse the trial court's revocation of the suspended sentence and reinstatement of the original sentence requiring confinement.

## VI.

Grandmother seeks attorney's fees on appeal under Tennessee Code Annotated section 36-5-103(c), which permits the prevailing party in a criminal contempt action to recover reasonable attorney's fees. As Grandmother is not the prevailing party on appeal, she is not entitled to recover fees under this provision.

## VII.

For the reasons discussed above, we reverse the trial court's order holding Father in criminal contempt on 28 counts. We likewise reverse the court's determination that Father violated the terms of the suspension of his sentence and the judgment ordering him to serve the 100-day sentence in confinement.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE

- 13 -